FILED

JUL 11 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:                          §
MATTER OF DISCIPLINARY          §
COMPLAINT AGAINST               §
OMAR W. ROSALES, ESQ.           §
                                §

SA16MC1326 DAE

OMNIBUS ORDER: (1) ADOPTING IN PART THE DISTRICT
DISCIPLINARY COMMITTEE'S FINAL REPORT AND
RECOMMENDATION, (2) OVERRULING OBJECTIONS TO THE FINAL
REPORT, AND (3) SUSPENDING FOR A PERIOD OF THREE YEARS
OMAR W. ROSALES, ESQ. FROM ADMISSION TO AND PRACTICE IN THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS

Before the Court is a Final Report and Recommendation ("the Final

Report"), prepared and submitted to Chief Judge Orlando L. Garcia by the

Investigation Panel ("the Panel") of the Western District of Texas' District

Disciplinary Committee ("the Committee") on April 25, 2017. Omar W. Rosales,

Esq. ("Respondent" or "Rosales") submitted objections to the Final Report on

April 28, 2017. Pursuant to Local Rule AT-7(g), the matter was referred to the

undersigned on May 3, 2017, for resolution. On July 7, 2017, the Court held a

hearing on the Final Report and related objections, at which Rosales appeared and

was represented by Jennifer Hasley, Esq. and Gregory M. Hasley, Esq.

1

After careful consideration of the Final Report, the objections submitted therewith, the relevant factual and procedural background of this disciplinary matter, and the arguments advanced at the hearing, the Court—for the reasons that follow—(1) **ADOPTS IN PART** the Panel's Final Report issued on April 25, 2017, (2) **OVERRULES** Respondent's Objections to the Final Report, and (3) **SUSPENDS FOR A PERIOD OF THREE YEARS** Respondent Omar W. Rosales, Esq. from admission to and practice in in the United States District Court for the Western District of Texas, effective immediately.

## BACKGROUND

The Court adopts and incorporates herein the factual and procedural background of this matter as set forth in Magistrate Judge Mark Lane's December 7, 2016 Order ("the Order"), whose caption is comprised of six cases, including as listed first <u>Deutsch v. Henry</u>, No. 1-15-CV-490-LY-ML. (Dkt. # 135 at 4–30;[1] <u>see also</u> "Tr. Proc.," at 1–52.[2]) After reviewing the record – including the dockets in the six cases and relevant hearing transcripts and filings, as well as the written

---

[1] Unless otherwise indicated, all docket citations are to the matter <u>Deutsch v. Henry</u> ("<u>Henry</u>"), No. 1-15-CV-490-LY-ML.

[2] The Committee's record of evidence in the above-captioned disciplinary investigation is cited in the Panel's Initial and Final Reports as "Omar Rosales Transcript of Proceedings" or "Tr. Proc." For continuity of reference, the Court will use the same designation in this Order, although it notes that the "Tr. Proc." cite functionally serves as a "record" cite and does not cite to an actual transcript, unless excerpts of transcripts have been included therein as part of the record.

material furnished by Rosales to the Panel – the Final Report also adopts and incorporates by reference the factual and procedural summary set forth in the Order.  (Final Report ¶¶ 10, 12.)  Accordingly, and having reviewed the same, the Court here only emphasizes the most salient aspects of the background for contextual purposes.

I.   Rosales' Representation of Jon Deutsch in ADA Litigation

Respondent Omar W. Rosales, Esq. ("Rosales") represented Plaintiff Jon R. Deutsch ("Deutsch"), an individual with disabilities who requires a wheelchair for mobility.  (Dkt. # 135 at 4.)  Since 2015, Deutsch, along with his attorney, has filed upwards of 385 lawsuits in the Austin Division of the Western District of Texas, which generally follow the same model—Deutsch sues a small business alleging violations of, *inter alia*, Title III of the Americans with Disabilities Act ("ADA"), its regulations and guidelines, the Texas Human Resources Code ("THRC"), the Texas Architectural Barriers Act ("TABA"), and its Texas Accessibility Standards ("TAS").[3]  (Id.)  Deutsch's complaints are

---

[3] Title III of the ADA and its associated federal regulations prohibit discrimination on the basis of disability in places of public accommodations, which include privately owned businesses generally open to the public.  See, e.g., Tennessee v. Lane, 541 U.S. 509, 516–17, 536 (2004) (explaining the purpose and structure of the ADA); see also Dkt. # 135 at 4–5.  For purposes of this disciplinary matter and this Order however, the substantive law of Deutsch's claims is relevant only as a lens through which to analyze his attorney's, Rosales, conduct in the multiple,

generally of the same nature, alleging he could not access the defendant's facilities

due to insufficient or inadequate disabled parking, lack of required signage, or

thresholds and transitions between the parking lot and the establishment that do not

meet the accessibility standards.  (Id. at 5.)  The violations alleged are mostly real,

yet *de minimis*, and often the businesses are unaware they are not ADA-compliant.

(Id.)

    According to Judge Lane, the six lawsuits[4] captioned in the Order

follow this model.  Additionally, James C. Harrington ("Harrington") was counsel

of record for the defendants in all six lawsuits.  Harrington represented the

defendants *pro bono* in his individual capacity, and not in his capacity as director

of the Texas Civil Rights Project ("TCRP"), a tax-exempt nonprofit foundation he

founded in 1990 and of which he was the executive director until September 2016.

(Id. at 6.)  The Magistrate Court and Judge Lane first became involved in these six

cases in or around January 2016 when District Judge Lee Yeakel referred

Deutsch's motion to quash a deposition in the Henry case.  (Id.; see Dkt. # 10.)

---

similar suits filed against small businesses, six of which were represented by the
same defense attorney, James C. Harrington ("Harrington").

[4] The six lawsuits are: (1) Deutsch v. Henry, No. 1-15-CV-490-LY-ML;
(2) Deutsch v. Draker Enters. ("Draker"), No. 1-15-CV-807-LY-ML; (3) Deutsch
v. Chiwawa, Inc. ("Chiwawa"), No. 1-15-CV-1238-LY-ML; (4) Deutsch v. Clark
et al. ("Clark"), No. 1-16-CV-88-LY-ML; (5) Deutsch v. La Tierra De Simmons
Familia Ltd. ("La Tierra"), No. 1-15-CV-901-RP, ML; and (6) Deutsch v. Phil's
Icehouse, Inc. ("Phil's Icehouse"), No. 1-15-CV-974-RP-ML.

II.     Rosales' Conduct in the Six ADA Lawsuits

        The Order comprehensively describes that, since January 2016, Judge Lane had referred to him by the district judges – and held "contentious" hearings on – several motions[5] between Rosales and Harrington filed on behalf of themselves and/or their respective clients, including but not limited to:

- Deutsch's February 5, 2016 motion to compel adequate discovery responses, and Defendant's request for sanctions in response (Dkt. # 135 at 7; see Dkts. ## 25, 26);

- Defendant's April 20, 2016 motion to compel discovery, specifically a logbook of Deutsch's alleged visits to the businesses he eventually sued (Dkt. # 135 at 8; see Dkt. # 49);

- Rosales' May 24, 2016 motion for separate hearing on Defendant's motion to compel the logbook, due to a temporary *ex parte* temporary restraining order ("TRO") Rosales had applied for and been issued against Harrington immediately prior in state court (Dkt. # 135 at 8; see Dkt. # 25 in Clark);

---

[5] Many of the motions referred or set for hearings before Judge Lane were identically filed across all six lawsuits due to similarity of the issues alleged and the same attorney representation: Rosales for Plaintiff Deutsch and Harrington for the defendant businesses sued for ADA violations. (See, e.g., Dkt. # 135 at 9 (stating, for example, that in June 2016 Rosales filed motions to dismiss pursuant to Fed. R. Civ. P. 41(a)(2) across all six cases, but defendants opposed the motion in all six cases because Harringon argued that issues of sanctions, standing, and attorneys' fees needed to be resolved prior to dismissal (citing dockets items in all six cases).)

- Deutsch's June 17, 2016 motion to dismiss pursuant to Fed. R. Civ. P. 41(a)(2)[6] (Dkt. # 135 at 9; see Dkt. # 65);

- Rosales' June 20, 2016 motion for sanctions due to the use of a racial slur[7] (Dkt. # 135 at 10; see Dkt. # 67);
- Rosales' June 20, 2016 motion for a gag order[8] (Dkt. # 135 at 10–11; see Dkt. # 46 in Clark);

- Rosales' June 22, 2016 motion for sanctions due to "further racist comments" by defense counsel, Harrington (Dkt. # 135 at 11; see Dkt. # 32 in La Tierra; Dkt. # 13 in Draker);

- Harrington's July 20, 2016 motion for Rule 11 sanctions against Rosales and Deutsch, sought under Fed. R. Civ. P. 11(c)(3)[9] (Dkt. # 135 at 11; see Dkt. # 83); and

- Defendants' August 10, 2016 Court-ordered consolidated supplemental memorandum to specify sanctionable misconduct by Rosales (Dkt. # 96), from which Judge Lane later issued a Show Cause Order on August 23, 2016, regarding the conduct he believed could merit sanctions ("Show Cause Order," Dkt. # 103) and which would be the subject of the

---

[6] Filed in all six lawsuits. (See Dkt. # 135 at 9 (listing docket citations).)

[7] Filed in all six lawsuits. (See Dkt. # 135 at 10 (listing docket citations).)

[8] Filed in all six lawsuits. (See Dkt. # 135 at 11 (listing docket citations).)

[9] Filed in all six lawsuits, Harrington's motion for sanctions set forth substantively similar arguments in five of the six cases, but in Clark, the motion contained a new allegation by Harrington—that Rosales had fabricated an e-mail attached as an evidentiary exhibit to Rosales' response in opposition to a motion to compel depositions in the Clark case. (See Dkt. # 135 at 11–12 (listing docket citations); see also Dkt. # 68, referencing Dkt. # 62-4, Ex. 4, in Clark.)

September 13, 2016 Show Cause Hearing ("Hrg. Tr.," Dkt. # 133) (see generally Dkt. # 135 at 15–16, 20–30).

Judge Lane's Order also describes a few other notable motions that came before the Court in late 2016, which further corroborate the nature of Rosales' misconduct towards the Court and opposing counsel. Prior to the September 13, 2016 Show Cause Hearing, Defendants subpoenaed Yahoo requesting Rosales' email headers for the dates under scrutiny with respect to Harrington's claim that Rosales fabricated an email and attached it to a responsive brief as an evidentiary exhibit. (Dkt. # 135 at 18.) Because Rosales did not give his consent, Yahoo' standard procedures required it to observe a fifteen-day grace period before releasing the emails to Defendants. (Id.) Although the Defendants filed an emergency motion to compel, Judge Lane denied the motion, finding that the fifteen-day grace period was not unreasonable, and that Defendants could file a motion to continue as needed. (Id.)

In the meantime, Rosales also filed objections to Judge Lane's August 23, 2016 Show Cause Order, in which he argued that Judge Lane had violated Federal Rule of Civil Procedure 11's "safe harbor" provision in allowing Defendants' sanctions motion to proceed. (Id. at 18–19.) However, Judge Lane determined that, because defense counsel sought sanctions under Rule 11(c)(3) and not Rule 11(c)(2) – the former of which does not include a "safe harbor" provision

7

– there was no violation of Rule 11 in proceeding. (Id. at 19.) Per the Order, Judge Lane explained this distinction to Rosales several times "to no avail." (Id.; see, e.g., Dkt. # 103 at 3.) Rosales also filed another motion requesting Judge Lane's recusal, in which he argued that Judge Lane was biased and not impartial. (Dkt. # 135 at 19; see Dkt. # 113.) District Judges Robert Pitman and Lee Yeakel denied the recusal motion across all six lawsuits. (Dkt. # 135 at 19; see, e.g., Dkt. # 117.)

Finally, one day prior to the Show Cause Hearing before Judge Lane, Rosales filed a motion to reschedule the hearing due to a purported medical issue Deutsch was experiencing. (Dkt. # 135 at 19; see Dkt. # 116.) However, Judge Lane denied the motion based on the determination that the sanctions allegations raised by Harrington concerned Rosales' conduct alone, and therefore, the Show Cause Hearing would proceed as scheduled, with only Rosales' attendance compelled. (Dkt. # 135 at 19; see Dkt. # 118.) The details of Rosales' misconduct in the motion practice and hearings described above is incorporated herein as described in Judge Lane's Order, the citations to which have been independently verified by this Court. (See Dkt. # 135 at 4–30.)

III.    The Referral in Judge Lane's Order

As a result of this conduct spanning six lawsuits and a year of motions and hearings before Judge Lane, the Order issued by Judge Lane on December 7,

8

2016, (1) imposed monetary sanctions against Rosales per Federal Rule of Civil Procedure 11;[10] *and* (2) directed the Western District of Texas' District Disciplinary Committee ("the Committee") to consider Rosales' conduct described therein for professional violations and possible disciplinary measures ("the Referral").[11]  (Dkt. # 135 at 49.)  Specifically, in the penultimate section of the Order, Judge Lane declared that "the undersigned finds it appropriate that an objective body review the actions of Rosales in this matter [and] [t]herefore, the undersigned **REFERS** the issue to the Western District of Texas Disciplinary Committee, Karl O. Bayer Jr., Esquire, who is the chair of the committee, to address whether further sanctions are appropriate."  (Dkt. # 135 at 49 (emphasis in original) (and stating that, "[a]mong other possible additional sanctions, the court specifically requests that the Committee consider whether disbarment from the Western District of Texas is proper").)

Accordingly, pursuant to Local Rule AT-7(f)(1), on December 12, 2016, the Chair of the Committee, Karl Bayer ("the Chair" or "Bayer"), sent

---

[10] Specifically, under Fed. R. Civ. P. 11(c)(3) and the court's inherent power, Judge Lane awarded Harrington $32,962.50 in fees, and Herring & Panzer, LLP $136,122.50 in fees and $6,588.78 in expenses.  (Dkt. # 135 at 32–33, 49.)

[11] The Order was affirmed by District Judges Pitman and Yeakel across all six lawsuits.  (See, e.g., Dkts. ## 143, 144.)  Rosales filed notices of appeal to the Fifth Circuit in the six cases variously on March 16, March 17, and March 31, 2017. (See, e.g., Dkt. # 146.)

Rosales notice ("the Notice") concerning the Referral and regarding Rosales'

obligations under the Local Attorney Rules of the Western District of Texas,

specifically Local Rule AT-7.  (Final Report ¶ 2; Tr. Proc. at 53.)  The Notice also

indicated that, pursuant to Local Rule AT-7(f)(2), Rosales was required to respond

in writing no later than 14 days after his receipt of the Notice, "admit[ing] or

deny[ing] each claim asserted in the Referral and stat[ing] concisely any defense to

each claim."  (Tr. Proc. at 53.)

IV.   <u>Proceedings by the District Disciplinary Committee</u>

On December 21, 2016, Rosales asked the Committee for an abeyance

of the disciplinary proceeding until Judge Lane's Order was affirmed or reversed

by the Fifth Circuit.  (Final Report ¶ 2; Tr. Proc. at 54–56.)  The Chair denied the

request for an abeyance, but extended until January 25, 2017, the deadline under

Local Rule AT-7(f)(2) for Rosales to respond in writing regarding the Referral.

(Final Report ¶ 2.)  On January 25, 2017, Rosales sent a letter (Tr. Proc. at 62–69)

and eight exhibits (Tr. Proc. at 70–158) to the Chair, responding to the Referral

regarding his conduct.  (Final Report ¶ 3.)  On January 30, 2017, the Chair

appointed a screening subcommittee pursuant to Local Rule AT-7(f)(3), which

consisted of David Gonzalez, Gary Zausmer, and John J. McKetta III and was

appropriately comprised of at least one attorney who practices in the same area as

the referred attorney.[12] (Id. ¶ 4; Tr. Proc. at 159.)  The screening subcommittee

conducted a preliminary inquiry and determined that, even after considering

Rosales' January 25, 2017 response, the Referral stated sufficient allegations,

which – if accurate – may warrant discipline pursuant to Local Rule AT-7.  (Final

Report ¶ 5; "Determination by Screening Subcommittee," Tr. Proc. at 160.)

Specifically, the screening subcommittee on February 7, 2017,

determined that the Committee's investigation into Rosales should relate to the

following factual matters outlined in the Referral:

(i)     Rosales' alleged false and abusive statements concerning Harrington,
        as listed in the Appendix[13] to the Order;

(ii)    Rosales' allegedly fabricated email;

(iii)   Rosales' criminal charge against Harrington for alleged stalking;

(iv)    Rosales' obtaining of an *ex parte* TRO in state court against
        Harrington, and Rosales' motion for a separate hearing in federal
        court based upon the TRO;

---

[12] Both Gary Zausmer and John J. McKetta III practice in the area of civil law, and
David Gonzalez practices in criminal and appellate law.  The Referral involved
Rosales' conduct in civil cases, and Rosales advertises himself as an appellate
attorney, as well.

[13] The Appendix can be found at Dkt. # 135-1, which is titled "List of Sanctioned
Statements and Corresponding Docket Filings."

(v)    The statement in Rosales' written response in this disciplinary proceeding that the TRO "was based upon an evidentiary hearing and emails from Jim Harrington;"

(vi)   Rosales' motion to recuse Magistrate Judge Lane; and

(vii)  Rosales' in-court statements as to his residence in Cameron County, Texas.

(Final Report ¶ 6; Tr. Proc. at 161–62.)

As to these factual matters, the screening subcommittee recommended that an investigation into Rosales should include the following:

(a) Whether Rosales has engaged in conduct that violates one or more of the following Texas Disciplinary Rules of Professional Conduct ("TDRPC"): Rules 3.01, 3.02, 3.03(a), 3.03(b), 3.04(b), 3.04(c)(5), 4.01(a), 4.04(a), 4.04(b)(1), 8.04(a)(3);

(b) Whether Rosales presents an impediment to the orderly administration of justice or the integrity of the Court under Local Rule AT-7(c)(6); and

(c) Whether Rosales represented one or more of his clients in such a manner as to raise a serious question concerning the quality of his professional performance under Local Rule AT-7(c)(7).

(Final Report ¶ 6; Tr. Proc. at 162–63.)  Based on the screening subcommittee's recommendation, on February 8, 2017, the Chair properly appointed a panel pursuant to Local Rule AT-7(f)(4) ("the Panel") to investigate further, which consisted of the Chair (Bayer), David Gonzalez, Gary Zausmer, and John J.

12

McKetta III (who was appointed chair of the instant Panel).[14]  (Final Report ¶ 7;
Tr. Proc. at 164.)

On February 21, 2017, consistent with Local Rule AT-7(f)(4), the
chair of the Panel gave notice to Rosales concerning the Panel's composition and
concerning the matters to be investigated.  (Final Report ¶ 8; Tr. Proc. at 172.)  Per
Local Rule AT-7(f)(5), this notice also advised Rosales that he should appear on
March 21, 2017, at 9:00 a.m. to present any further evidence he may wish to
provide and to be questioned by the Panel.  (Id.)

On March 21, 2017, three members of the Panel convened for the
scheduled meeting with Rosales, but Rosales failed to appear.  (Final Report ¶ 9.)
In correspondence with the chair of the Panel commencing a few days prior on
March 16, 2017, Rosales stated his view that he did not need to attend on March 21
because the disciplinary proceeding would "cease to exist" if the Fifth Circuit
reversed Judge Lane's Order.  (Id.; Tr. Proc. at 175–77.)  The chair of the Panel
cautioned Rosales several times (in numerous responses) that his attendance was
mandatory and that Local Rule AT-7(f)(5) required Rosales to cooperate fully with
the Panel in its investigation.  (Final Report ¶ 9; Tr. Proc. at 172, 183, 185, 187,

---

[14] Again, the Panel was properly comprised of at least one member who is an
attorney who practices in the same area as the referred attorney.  (See Local Rule
AT-7(f)(4) (noting, also, that members of the initial screening subcommittee may
serve as members of the Panel).)

192, 196; see also Local Rule AT-7(f)(5) ("Full cooperation with any committee investigation is an obligation of any member of the bar of this court.").)

## V.     The Panel's Initial Report and Rosales' First Set of Objections

Thereafter, on April 5, 2017, and pursuant to Local Rule AT-7(f)(6), the Panel timely prepared and submitted its Initial Report and Recommendation ("the Initial Report"), to which Rosales – pursuant Local Rule AT-7(f)(7) – timely submitted his first set of objections on April 19, 2017.  (Final Report ¶ 26.)  The Initial Report concluded that Rosales "engaged in serious misconduct" and recommended that "such violations should result in [his] being barred from continued admission to and practice in the Western District of Texas."  (Initial Report ¶ 11.)  After considering Rosales' first set of objections, the Panel issued its Final Report and Recommendation ("the Final Report") on April 25, 2017, in accordance with Local Rule AT-7(f)(7).

## VI.    The Panel's Final Report and Rosales' Second Set of Objections

In accordance with the local rules, the Final Report permissibly did not modify, amend, or revoke any portion of its Initial Report.  (Final Report ¶¶ 26, 27; see also Local Rule AT-7(f)(7) (noting that, "[t]he panel, after considering the response, may modify, amend, revoke, *or adhere to its original recommendation and will so inform the committee chair*") (emphasis added).)  Therefore, the Court emphasizes that the Final Report's disbarment recommendation is identical as that

14

contained in the Initial Report—that Rosales "engaged in various conduct for which discipline should be imposed" and that his admission to the bar of the United States District Court for the Western District of Texas "should be terminated." (Final Report ¶ 11.)

Specifically, the Final Report concludes that Rosales violated the following rules of the Texas Disciplinary Rules of Professional Conduct ("TDRPC"):

- **Rule 3.01:** Meritorious Claims and Contentions[15] (id. ¶ 13)

- **Rule 3.02:** Minimizing the Burdens and Delays of Litigation[16] (id. ¶ 14)

- **Rule 3.03(a)** and **Rule 3.04(b):** Candor Toward the Tribunal,[17] and Fairness in Adjudicatory Proceedings,[18] respectively (id. ¶ 15)

---

[15] "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." Tex. Disciplinary Rules Prof'l Conduct R. 3.01.

[16] "In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter." Tex. Disciplinary Rules Prof'l Conduct R. 3.02.

[17] "A lawyer shall not knowingly . . . [*inter alia*] make a false statement of material fact or law to a tribunal [or] offer or use evidence that the lawyer knows to be false." Tex. Disciplinary Rules Prof'l Conduct R. 303(a).

[18] "A lawyer shall not . . . falsify evidence, counsel or assist a witness to testify falsely, or pay, offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the

- **Rule 3.03(b):** Candor Toward the Tribunal[19] (id. ¶ 16)

- **Rule 3.04(c)(5):** Fairness in Adjudicatory Proceedings[20] (id. ¶ 17)

- **Rule 4.04(a):** Respect for Rights of Third Persons[21] (Final Report ¶ 18)

- **Rule 4.04(b)(1):** Respect for Rights of Third Persons[22] (id. ¶ 19)

- **Rule 8.04(a)(3):** Misconduct[23] (id. ¶ 20)

The Final Report also concludes that Rosales' conduct violated the

Local Attorney Rules for the Western District of Texas.  Namely, the Final Report

---

witness or the outcome of the case."  Tex. Disciplinary Rules Prof'l Conduct R. 3.04(b).

[19] "If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall make a good faith effort to . . . correct or withdraw the false evidence."  Tex. Disciplinary Rules Prof'l Conduct R. 3.03(b).

[20] "A lawyer shall not . . . in representing a client before a tribunal . . . engage in conduct intended to disrupt the proceedings."  Tex. Disciplinary Rules Prof'l Conduct R. 3.04(c)(5).

[21] "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."  Tex. Disciplinary Rules Prof'l Conduct R. 4.04(a).

[22] "A lawyer shall not present, participate in presenting, or threaten to present . . . criminal or disciplinary charges solely to gain an advantage in a civil matter."  Tex. Disciplinary Rules Prof'l Conduct R. 4.04(b)(1).

[23] "A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."  Tex. Disciplinary Rules Prof'l Conduct R. 8.04(a)(3).

finds that: (1) Rosales presents an impediment to the orderly administration of
justice or integrity of the Court, in violation of Local Rule AT-7(c)(6) (id. ¶ 21);
(2) that Rosales represented his client, Deutsch, in such a manner as to raise a
serious question concerning the quality of his professional performance, in
violation of Local Rule AT-7(c)(7) (id. ¶ 22); and (3) that Rosales violated his duty
under Local Rule AT-7(f)(5) to fully cooperate with the Panel's investigation (id.
¶ 23).

      The Final Report meticulously addresses five "Defenses" to Rosales'
conduct, to the extent these could be gleaned from Rosales' initial written
responses submitted in January 2017 since he did not appear at the March 21
meeting with the Panel. (Final Report ¶¶ 24a–24e; see also Tr. Proc. at 62–69, 70–
158; 196.) Lastly, the Final Report carefully addresses and finds meritless
Rosales' objections submitted on April 19, 2017, and explains why the Final
Report therefore remained unmodified from the Initial Report. (Final Report ¶¶
26A–26V.)

      On April 28, 2017, Rosales timely submitted a second set of
objections to the Final Report, pursuant to Local Rule AT-7(g). On May 3, 2017,
and pursuant to Local Rule AT-7(g), the instant disciplinary matter – i.e., review of
the Final Report and Rosales' second set of objections – was referred to the
undersigned for resolution. According to Local Rule AT-7(g), this Court's Order

making a "decision as to whether disciplinary action is warranted, and what sanction to impose, is a final ruling of the court." On May 24, 2017, the undersigned afforded Rosales the opportunity for a hearing, as outlined in Local Rule AT-7(g) and AT-7(h). Thus, a closed hearing on the matter was conducted on July 7, 2017, which was limited in scope to addressing the Final Report and Rosales' second set of objections, as dictated by Local Rule AT-7(f)(7) and AT-7(g), and wherein Rosales was represented by counsel.

<div align="center">LEGAL STANDARDS</div>

I.    Attorney Disciplinary Proceedings and Disbarment as Sanction

"It is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers." Resolution Trust Corp. v. Bright, 6 F.3d 336, 340 (5th Cir. 1993) (citing, *inter alia*, In re Snyder, 472 U.S. 634, 643–44 (1985)). But before sanctioning an attorney under these inherent powers, a district court must make a specific finding that the attorney in question acted in "bad faith." In re Thalheim, 853 F.2d 383, 389 (5th Cir. 1988) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980)). Further, the Supreme Court has held that a court's imposition of sanctions under its inherent powers is reviewable for abuse of discretion. Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991); see also In re Smith, 275 F.3d 42, 2001 WL 1223643, at *1 (5th Cir. Sept. 26, 2001) (noting that the Fifth Circuit reviews disciplinary proceedings in the

district court regarding attorney disbarment for constitutional violations and for abuse of discretion (citing Selling v. Radford, 243 U.S. 46, 51 (1917) and In re Dawson, 609 F.2d 1139, 1142 (5th Cir. 1980))).

"Although disbarment is intended to protect the public, it is a 'punishment or penalty imposed on the lawyer.'" Dailey v. Vought Aircraft Co., 141 F.3d 224, 229 (5th Cir. 1998) (quoting In re Ruffalo, 390 U.S. 544, 550 (1968)). A district court may disbar attorneys "only on the strength of clear and convincing evidence that they committed a disbarment offense." NASCO, Inc. v. Calcasieu Television and Radio, Inc., 894 F.2d 696, 708 (5th Cir. 1990), aff'd 501 U.S. 32 (1991) (citing In re Thalheim, 853 F.2d at 389 n.9). Thus, "[a] district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." In re Sealed Appellant, 194 F.3d 666, 670 (5th Cir. 1999).

"An attorney subject to disciplinary proceedings is entitled to due process." Id. at 670. Additionally, "[b]ecause disbarment is a quasi-criminal proceeding, any disciplinary rules used to impose this sanction on attorneys must be strictly construed, resolving ambiguities in favor of the person charged." Bright, 6 F.3d at 341 (citing In re Thalheim, 853 F.2d at 388); see also Dailey, 141 F.3d at 229 (stating that, because disbarment or suspension proceedings are adversarial and quasi-criminal in nature, an attorney is entitled to procedural due

19

process, "which includes notice and an opportunity to be heard" in such

proceedings).  In this vein, the Fifth Circuit has stated that the Supreme Court

clearly and consistently upholds the requirement that, prior to an attorney's

disbarment, he or she is entitled to notice of the charges made and an opportunity

to explain or defend, "except for extreme misconduct occurring in open court, in

the presence of the judge." Dailey, 141 F.3d at 230 (citing cases).

A respondent facing disbarment proceedings has the burden

throughout of showing good cause why he should not be disbarred.  Theard v.

United States, 228 F.2d 617, 618 (5th Cir. 1956).  Finally, though the Texas

Disciplinary Rules of Professional Conduct do not expressly apply to sanctions in

federal courts, a federal court may nonetheless hold attorneys accountable to the

standards set forth by the state code of professional conduct.  Bright, 6 F.3d at 341.

And in addition to the TDRPC, the Fifth Circuit's "source for professional

standards has been the canons of ethics developed by the American Bar

Association." Id.

## DISCUSSION

Pursuant to Local Rule AT-7(g), the undersigned is specifically tasked

with making a final ruling regarding the Committee's recommendation on

disciplinary action and imposition of sanctions, including disbarment, against

Rosales.  Therefore, the instant Order only addresses the Panel's Final Report

issued on April 25, 2017; Rosales' second set of objections submitted on April 28, 2017;[24] and relevant arguments on this narrow scope of issues advanced at the hearing on July 7, 2017.[25] For continuity and ease of reference, the Court organizes this section in accordance with the numbering in Rosales' second set of objections.

I.    Procedural Objections

A. Case is Currently on Appeal

Rosales argues that Judge Lane's Order is currently on appeal to the Fifth Circuit in all six lawsuits, and that therefore, if the Fifth Circuit reverses or vacates the Order, then "there is no referral as <u>the referral only exists within the Order.</u>" Further, Rosales argues that if the Order is vacated, then the majority of the Committee's findings "<u>fail also</u>" because its findings are based on the Order.

---

[24] Like his first set of objections, Rosales' second set of objections were accompanied by a detailed cover letter. Because Rosales' objections are substantially similar to the reasons in the cover letter as to why Rosales objects to the Final Report, the Court subsumes the cover letter's content into Rosales' objections and addresses the arguments therein jointly. His April 28, 2017 objections will be cited as "Resp't Obj." Additionally, these objections were submitted with ten exhibits, which – if referenced herein – will be cited as "Respondent's Exhibit" or "Resp't Ex."

[25] The undersigned is in receipt of Rosales' supplemental documents (specifically, his military discharge certificate DD-214 and VA Disability rating), provided to the Court on June 26, 2017 in advance of the July 7, 2017 hearing. Upon review, the Court finds that these documents are neither within the narrow scope of issues to be reviewed by this Court pursuant to Local Rule AT-7(g), nor does their consideration affect the Court's findings laid out herein.

Under this objection, Rosales also contends that the Show Cause Hearing on

September 13, 2016, was improper and in violation of the Rule 11 "safe harbor"

provisions.  Moreover, Rosales alleges that the Court did not have jurisdiction to

hold the Show Cause Hearing because Rosales had previously filed (two months

prior) his motions for voluntary dismissal under Rule 41(a)(1)(A) across all six

cases, which should have been granted.  (Resp't Obj. ¶ A (emphases in original).)

Rosales' first category of objections is misplaced, and accordingly,

**OVERRULED.**  First, and as the Final Report correctly points out, the Referral

stands alone from any subsequent action the Fifth Circuit may take in related

litigation.  Pursuant to Local Rules AT-7(c) and AT-7(f), the Committee's receipt

of a referral from "any Magistrate Judge, Bankruptcy Judge, or District Judge"

triggers the investigative and review procedures under Local Rule AT-7.  These

procedures are *independent of* any decision the Fifth Circuit might make regarding

Judge Lane's Order imposing sanctions against Rosales, particularly because – as

indicated in Local Rule AT-7 – referrals from any Western District judge may take

any form, not just through an official court order.  Furthermore, even if the Fifth

Circuit vacates the Order, it is not the case – contrary to Rosales' assertion – that

the Committee's findings "also fail," since both the Initial and Final Reports

explicitly state that the findings therein were made on the basis of the Panel's

independent review of the *entire* record, including the relevant filings and

transcripts in the six ADA cases, and the materials and correspondence provided by Rosales to the Panel.  (See Initial Report ¶¶ 10, 12; Final Report ¶¶ 10, 12.)

This objection also addresses the alleged impropriety of the Show Cause Hearing, arguing that the evidentiary hearing violated Rule 11's "safe harbor" provision.  However, the Court finds that – as the Order makes clear – the Show Cause Hearing was scheduled and conducted on the basis of Harrington's sanctions motions (see, e.g., Dkts. ## 83, 84), urging Judge Lane to impose sanctions against Rosales pursuant to the court's inherent power *and* Rule 11(c)(3). (See Dkt. # 135 at 18–19; see also Show Cause Order at 3.)

As the Order correctly indicates,[26] Rule 11's "safe harbor" provision only applies to sanctions sought under Rule 11(c)(2), which states that a motion for sanctions by a party must be served under Rule 5, "but must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  (Fed R. Civ. P. 11(c)(2); see Dkt. # 135 at 18–19.) These 21 days in the rule are commonly referred to as Rule 11's "safe harbor" provision, allowing the challenged party a meaningful opportunity to correct its conduct prior to the sanctions motion being filed against it with the court. Margetis v. Furgeson, 666 F. App'x 328, 331–32 (5th Cir. 2016) (citing Elliott v.

---

[26] The Order addressed this "safe harbor" argument because Rosales had filed objections to the Show Cause Order in the Clark case.  (See Dkt. # 98 in Clark.)

Tilton, 64 F.3d 213, 216 (5th Cir. 1995)). In contrast, Rule 11(c)(3) specifies that

"*[o]n its own*, the court may order an attorney, law firm, or party *to show cause*

why conduct specifically described in the order has not violated Rule 11(b)." Fed.

R. Civ. P. 11(c)(3) (emphasis added).

   The Court has reviewed Harrington's sanctions motions filed in the

six lawsuits on or around July 20, 2016 (see, e.g., Dkt. # 83), including the slightly

different sanctions motion filed in the Clark case that incorporated the new

allegation that Rosales fabricated an email as evidence (see Dkt. # 68 in Clark). To

be clear, Harrington's sanctions motions do not anywhere specifically mention

Rule 11(c)(3). But because Rule 11(c)(3) explicitly states that a court, on its own

initiative, may order a party to show cause why its conduct is not sanctionable

under Rule 11(b), the Court finds that Harrington's sanctions motions were clearly

and implicitly brought pursuant to Rule 11(c)(3) – as opposed to Rule 11(c)(2) –

especially where Harrington explicitly asks Judge Lane to impose sanctions

pursuant to the "court's inherent power," laying out case law on the same. (See,

e.g., Dkt. # 83 at 1–2, citing, *inter alia*, In re Stone, 986 F.2d 898, 902 (5th Cir.

1993), for the proposition that the Supreme Court has recognized that courts have

the power to "levy sanctions in response to abusive litigation practices.")

Therefore, Judge Lane correctly concluded in the Order, and this Court

independently finds, that the August 23, 2016 Show Cause Order was properly

issued, and the September 13, 2016 Show Cause Hearing was properly conducted

on the basis of Harrington's Rule 11(c)(3) sanctions motions.

Finally and relatedly, Rosales asserts that Judge Lane did not have

jurisdiction to hold the Show Cause Hearing because Rosales had previously filed

motions for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)

across his client's lawsuits, which were improperly denied by Judge Lane. But

again, this Court finds that Judge Lane not only had jurisdiction to conduct the

Show Cause Hearing, but also was under no obligation to grant Rosales' voluntary

dismissals. Rule 41 governs dismissal of actions, and specifically, Rule

41(a)(1)(A) states that the plaintiff may dismiss an action without a court order by

filing either "(i) a notice of dismissal before the opposing party serves either an

answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed

by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A).

The Court first notes that, though Rosales makes reference to Rule

41(a)(1)(A), the Court has reviewed the motions themselves and they expressly

requested dismissal under Rule 41(a)(2), which sets forth a different standard.

(See, e.g., Dkt. # 65 at 2 (arguing that, because the plaintiff "achieved his

objective" of bringing the defendant property into compliance with the ADA, the

plaintiff "can chose [sic] to dismiss a case via court order," under FRCP 41(a)(2).)

Under Rule 41(a)(2), "[e]xcept as provided in Rule 41(a)(1), an action may be

dismissed at the plaintiff's request only by court order, *on terms that the court considers proper* [. . .]" Fed. R. Civ. P. 41(a)(2) (emphasis added). By its text alone, nowhere does Rule 41(a)(2) *require* a court to grant a plaintiff's request for dismissal. In fact, arguably the text indicates the opposite – that a court has discretion to dismiss a plaintiff's action through court order "on terms that the court considers proper."

Besides being supported by the plain language of the rule, this interpretation is consistent with case law on Rule 41(a)(2), which does not *require* a court to grant a plaintiff's dismissal motion filed thereunder. "The plaintiff's right to dismissal under Rule 41(a)(2) 'is not absolute.'" Greyhound Lines, Inc. v. Younan Props., Inc., Civil Action No. 3:07-CV-2111-O ECF, 2008 WL 2340219, at *1 (N.D. Tex. June 9, 2008) (quoting LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976)). The decision to dismiss under Rule 41(a)(2) "rests within the sound discretion of the district court and is only reviewed for an abuse of discretion." Id. (citing Schwarz v. Folloder, 767 F.2d 125, 129 (5th Cir. 1985)). As explained in the Order, the dismissal motions were opposed by Harrington across the six lawsuits, arguing that issues of sanctions, standing, and attorneys' fees needed to be resolved prior to dismissal. (See Dkt. # 135 at 9; see, e.g., Dkt. # 67.)

Because of Harrington's opposition – as well as because Rosales, immediately after filing the motions to dismiss, also filed two separate motions for sanctions and a motion for gag order – Judge Lane set all of these motions referred to him for a preliminary hearing on August 3, 2016. (See Dkt. # 135 at 11; see, e.g., Dkt. # 77 (setting hearing date).) As set forth in the Order, Judge Lane set these motions for a hearing because he "recognize[ed] the extreme nature of the allegations made in the[ ] motions" and determined that oral argument would be beneficial. (Dkt. # 135 at 11; see, e.g., Dkt. # 77 at 2.)

Judge Lane was well within his discretion to set and hear oral argument in a consolidated hearing on Rosales' motions for voluntary dismissal. See, e.g., Sims v. ANR Freight Sys., Inc., 77 F.3d 846, 849 (5th Cir. 1996) ("We recognize that a district judge has broad discretion in managing his docket[.]"); United States v. Colomb, 419 F.3d 292, 299 (5th Cir. 2005) ("A district court has inherent power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (internal quotations omitted)). Furthermore, Judge Lane was under no obligation to grant Rosales' motions to dismiss, properly finding – in agreement with Harrington – that the defendants' sanctions motions against Rosales and Deutsch had to be heard and determined prior to any dismissal of the actions, considering the consistently contentious conduct between the parties during the course of litigation. See Elbaor

v. Tripath Imaging, Inc., 279 F.3d 314, 317 (5th Cir. 2002) ("[M]otions for
voluntary dismissal should be freely granted *unless the non-moving party will
suffer some plain legal prejudice other than the mere prospect of a second
lawsuit.*" (emphasis added) (internal citation omitted)).

Contrary to Rosales' objection, the decision to not grant the voluntary
dismissals was a valid determination by Judge Lane and not a means to "artificially
keep[ ] the case open to fashion a late sanctions hearing against Mr. Rosales." (See
Resp't Obj. ¶ A.)  For the reasons set forth, Rosales' first category of objections is
wholly **OVERRULED.**

B. Freedom of Speech

Rosales argues that the Committee, by pursuing disciplinary sanctions
for Rosales' speech, is "purposely violating the First Amendment."  He contends
that the Committee cannot stop him from, or punish him for, filing complaints with
local law enforcement agencies against Harrington, "due to Harrington's alleged
criminal conduct."  Additionally, Rosales argues that the Committee cannot punish
Rosales for filing complaints against Judge Lane, a complaint which Rosales states
he filed prior to the Referral.  Further, Rosales states that because "Lane is not
even the presiding judge," "[i]f there was misconduct, the disciplinary referral
should have been made by the Presiding Judge – the Hon. Lee Yeakel, not
Magistrate Lane." (Resp't Obj. ¶ B.)

Rosales' objections are devoid of merit. As the Final Report correctly indicates, the First Amendment does not immunize an attorney from disciplinary consequences for violations of the TDRPC. (See Final Report ¶ 26B.) An attorney's professional speech rights are not absolute. For example, in Commission for Lawyer Discipline v. Benton, the Texas Supreme Court squarely addressed the issue of balancing and resolving a conflict between "the expressive rights of attorneys" and the public's right to the administration of justice. 980 S.W.2d 425, 429 (Tex. 1998). In Benton, a lawyer argued that disciplinary measures taken against him for violating TDRPC Rule 3.06(d) violated his constitutional free speech rights, since Rule 3.06(d) regulates lawyers' post-verdict communications with jurors. Id. at 428–29. The lawyer there had sent a rude, "abusive," and "insulting" private post-verdict letter to jurors who rendered a verdict against his client. Id. The Texas Supreme Court rejected the lawyer's First Amendment challenge because his speech "created a substantial likelihood of material prejudice to the administration of justice," and further – because lawyers are "key participants" of the legal system – the state bar may "demand some adherence to the precepts of that system in regulating their speech." Id. at 430, 432 (internal quotations and citation omitted).

In so deciding, the Texas Supreme Court relied heavily on the Supreme Court's decision in Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991).

There, a criminal defense attorney was given a private reprimand for violating a Nevada state bar rule that a "lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding." Id. at 1060.  The Supreme Court noted that lawyers are not protected by the First Amendment to the same extent as the general public, nor to the same extent even "as those engaged in other businesses." Id. at 1073.  Rather, in cases regarding lawyers' professional speech, the Court noted that it engages in a "balancing process, weighing the State's interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech that [is] at issue." Id.  In light of these considerations, the Supreme Court held that the rule's "substantial likelihood of material prejudice" standard – the same standard invoked in the Benton decision, discussed above – was sufficiently protective of lawyers' free speech rights to pass constitutional muster against a First Amendment challenge. Id. at 1075–76.

The Supreme Court explained that, as officers of the court, lawyers voluntarily accept a "fiduciary responsibility" to the justice system and have a "duty to protect its integrity." Id. at 1074, 1076.  Accordingly, it described membership in a state bar as a "privilege burdened with conditions," and therefore,

the degree of constitutional protection afforded to lawyers' speech varies

depending on the context. Id. at 1066, 1072. Thus, lawyers' participation in the

administration of justice allows a state to "demand some adherence to the precepts

of that system in regulating their speech," as the Benton court also emphasized. Id.

at 1074.

In light of these precedential decisions, the Court finds that Rosales'

First Amendment challenges to the Committee's disciplinary proceedings against

him lack merit. The Final Report clearly indicates that it is not, contrary to

Rosales' claim, merely "punishing him for filing complaints," but rather

recommending disbarment on the basis of a cumulative review of Rosales'

repeated and intentional disregard for the fair, honest, and equitable administration

of justice as a participant therein, as revealed by the record in the six lawsuits.

(Compare, e.g., Final Report ¶ 25, with Resp't Obj. ¶ B.) The Court finds that the

Panel's Final Report does not seek to broadly chill or punish Rosales' exercise of

his free speech rights, since – in the professional context as an attorney – case law

has clearly established that those rights are not unfettered. See, e.g., Hersh v.

United States ex rel Mukasey, 553 F.3d 743, 756 (5th Cir. 2008) (discussing the

Supreme Court's case law, including Gentile, that has "upheld other regulations on

attorney speech that are aimed at preventing abusive behavior," and noting that the

"ability of the government to regulate the speech of attorneys is also made evident by other Model Rules of Professional Conduct").

Rather, the Referral, the Committee's investigation, and the Panel's Initial *and* Final Reports, seek to discipline Rosales for a variety of conduct that has violated nine rules of the TDRPC, as well as three local attorney rules for the Western District of Texas, including for, *inter alia*, (1) filing unmeritorious or frivolous claims, (2) knowingly filing false evidence with the Court, (3) using tactics that only sought to embarrass or unduly burden the opposing counsel, and (4) threatening criminal charges to gain advantage in the six ADA civil lawsuits. (See, e.g., Final Report ¶¶ 13–23.)

Finally, this objection suggests that the Referral was "pure retaliation," and that further, Judge Lane was not authorized to make the Referral because he was not the presiding judge. This objection is patently false. First, the Court finds that there is no indication in the record that the Referral in the Order was "retaliatory." The Final Report came to the same conclusion, noting that "the evidentiary record before the Panel did not establish any improper motivation by Judge Lane." (See Final Report ¶ 26C.) Second, Judge Lane is unambiguously authorized, pursuant to Local Rule AT-7, to make referrals regarding potential attorney misconduct to the Committee. (See Local Rule AT-7(c) ("An attorney may be referred by *any Magistrate Judge, Bankruptcy Judge, or District Judge* to

32

the District Disciplinary Committee for appropriate review, investigation, and recommendation [. . .]" (emphasis added)).) Therefore, for the reasons set forth, this category of objections based on the First Amendment is **OVERRULED.**

### C. Error with Referral and Retaliation Claim

Rosales maintains that the Referral was improper because "it ordered the Committee to come up with a particular result: disbarment," and this was an improper direction for the Committee to issue a specific ruling against Rosales. Rosales also objects on the grounds that Judge Lane is not pursuing a valid disciplinary action, but rather is "pursuing a personal vendetta and retaliating for Rosales reporting Lane." (Resp't Obj. ¶ C.)

The Court **OVERRULES** this objection to the extent it has already addressed the substance of Rosales' similar argument in Discussion.I.B, supra. To the extent this objection presents a new argument – that the Referral allegedly directed the outcome of the disciplinary investigation – the Court finds that the Referral does not, contrary to Rosales' characterization, "direct" or "instruct" the Committee to "come up with a particular result: disbarment." Rather, the Court finds that the Referral, contained at the end of Judge Lane's thorough fifty-page Order describing Rosales' sanctionable conduct, clearly states that, "[a]mong possible sanctions, the court *specifically requests* that the Committee *consider*

*whether disbarment* from the Western District of Texas *is proper*." (See Dkt.
# 135 at 49 (emphasis added).)

This language explicitly asks the Committee to "consider" all
appropriate sanctions, including disbarment, but does not improperly instruct a
disbarment finding.  In fact, the Final Report emphasizes that its disbarment
recommendation is based on a review of the entire evidentiary and documentary
record, and that the Referral was the required catalyst to investigate Rosales'
alleged misconduct.  (See Final Report ¶¶ 1, 10–12.)  Accordingly, this objection is
**OVERRULED.**

D. Committee Chair's Comment

Rosales claims that, when the Chair first contacted Rosales in
December 2016 regarding the Referral, Bayer told Rosales that the Committee
would not proceed with a decision if the Order was overturned by the Fifth Circuit.
Per Rosales, he relied on this statement.  But then, one month thereafter, "Bayer
changed his mind and said the Committee would proceed," which Rosales
attributes to the Committee "having something to hide" and "not wanting the Fifth
Circuit to review the Order first."  Rosales also argues that the Committee, run by
Bayer, has no formal procedures, methods, policies, or manual, and that everything
in the Committee "happens on a whim." (Resp't Obj. ¶ D.)

Rosales' objections are baseless. First, it is undisputed that Local Rule AT-7, "Discipline of Attorneys," clearly provides the guidelines, procedures, and proper steps the Committee must take when it receives a referral from a federal judge regarding potential attorney misconduct in the Western District of Texas. (See generally Local Rule AT-7.) As both the Initial and Final Reports describe in detail, nothing in the disciplinary investigation conducted by the Panel, and more broadly, by the Committee, "happened on a whim." (See Initial Report ¶¶ 1–10; Final Report ¶¶ 1–12.) Rather, at every step of the disciplinary investigation managed and conducted by (1) the Chair, (2) the screening subcommittee, and (3) the Panel, the Court finds that there was strict adherence and compliance to the procedures and policies set forth in Local Rule AT-7, which was – in fact – promulgated by the Court for the Western District of Texas. (See supra Background.III–VI.)

Second, the Court finds that – though it has no way of knowing whether Bayer made a comment regarding not proceeding based on the Fifth Circuit's decision – the record does not support this otherwise unsubstantiated, repeated assertion.[27] First, Bayer has repeatedly denied making any such statement, and the December 12, 2016 notice letter itself – notifying Rosales that the Referral had been issued – made no mention of awaiting the Fifth Circuit's

---

[27] Rosales made this same assertion in his first set of objections, dated April 19, 2017, to the Panel's Initial Report.

decision(s). (See Final Report ¶ 26D; Tr. Proc. at 53.)  Second, when Rosales responded to Bayer on December 21, 2016, asking for an abeyance pending the Fifth Circuit's ruling on his appeal from Judge Lane's Order, Rosales' lengthy letter did not allude to or otherwise mention any such comment by Bayer, which presumably would have been incorporated given its direct relevance to the request. (See Tr. Proc. at 54–56.)

After Bayer denied the request for abeyance, Rosales' five-page letter to Bayer on January 25, 2017, again made no mention of any purported assurance made by Bayer to await Fifth Circuit review. (See Tr. Proc. at 62–69.) Additionally, the Final Report indicates – and the record reflects – that Rosales never filed an objection, answer, response, or request for reconsideration of the denial of his written request for abeyance pending Fifth Circuit review. (See Final Report ¶ 26D.)  For these reasons, the Court concludes that Rosales' assertion that Bayer made a comment – allegedly assuring Rosales the Committee would not move forward while it awaited the Fifth Circuit's decisions – is unsubstantiated, unsupported by the record, and otherwise not credible.  Accordingly, this objection is **OVERRULED.**

E. Committee Chair's Failure to Recuse Himself

Rosales insists that Bayer failed to recuse himself when a conflict of interest was identified.  According to Rosales, Bayer is a mediator in Austin and

36

earns more than $20,000 per week.  Because Bayer "<u>receives a substantial portion</u>

<u>of his income from referrals that come directly from Magistrate Lane and presiding</u>

<u>Federal Judge Lee Yeakel</u>," "[o]f course Mr. Bayer is going to heed [their]

instructions."  Rosales thus argues that this is a conflict of interest that Bayer failed

to report.  (Resp't Obj. ¶ E.)

       Upon reviewing the entirety of the record, the Court finds that this

objection is baseless.  The Panel issued its Initial Report on April 5, 2017.  (<u>See</u>

<u>generally</u> Initial Report.)  Prior to this date, Rosales sent several substantial letters

and emails to Bayer and the Panel's chair, McKetta, *none of which* assert, mention,

or object to the investigation on the basis of Bayer's purported conflict of interest.

(<u>See</u> Tr. Proc. at 62–69 (January 25, 2017 letter to Bayer, regarding denial of

abeyance request); Tr. Proc. at 165–67 (February 14, 2017 letter to Bayer,

regarding decision by screening subcommittee); Tr. Proc. at 175–77 (March 16,

2017 letter to McKetta, regarding not attending the scheduled Panel meeting set for

March 21); Tr. Proc. at 183–96 (email exchanges between Rosales and McKetta

immediately prior to March 21); Tr. Proc. at 197–98 (March 20, 2017 letter to

McKetta, regarding not attending scheduled Panel meeting set for March 21).)

       Instead, the first time this "conflict of interest" was mentioned was in

Rosales' first set of objections, submitted on April 19, 2017, to the Panel's Initial

Report.  (<u>See</u> Resp't First Obj. ¶ E.)  There, Rosales for the first time argued that

Bayer should have recused himself from these proceedings because Bayer "receives a substantial portion of his income [as a mediator] from referrals that come directly from Magistrate Lane." (Id.) These are reasons that largely mirror those set forth again in Rosales' second set of objections to the Final Report. (See generally Resp't Obj. ¶ E.) Notably, although "[n]either Mr. Bayer nor other members of the panel [saw] any factual, legal, or ethical basis that Mr. Bayer should recuse himself," Bayer decided – on his own initiative – to treat Rosales' first set of objections as a request that he recuse himself, and so *he did.* (See Final Report at 1 n.1 & ¶ 26E.)

Therefore, the Final Report was prepared and issued by the remaining three original members of the Panel: McKetta (the Panel's chair), Gonzalez, and Zausmer. Consequently, even if Rosales could prove, show, or somehow support his claim that Bayer has a conflict of interest conducting the disciplinary proceedings because of his purported professional benefits in receiving mediation referrals from Judge Lane, Bayer recused himself when the issue first arose and did not take part in issuing the Final Report, which is the only report the undersigned now takes up. Accordingly, the Court finds that – in light of this precautionary step taken by the Panel in response to an otherwise unsupported claim of a conflict of interest – this objection must be **OVERRULED.**

38

F. No Formal Procedures or Rules

      Rosales maintains that, as discussed in his objection in paragraph D, the Committee has no formal procedures, manuals, or guidebook. (Resp't Ex. 4.) He also alleges he was only told eight hours prior to the meeting with the Panel that he could bring documents as exhibits to present to the Committee (Resp't Ex. 5), which was unreasonable and proves that the Committee does not have procedures in place. (Resp't Obj. ¶ F.)

      The Court **OVERRULES** this objection to the extent it has already addressed the substance of Rosales' similar argument in Discussion.I.D, supra. To the extent Rosales introduces a new argument – that he was told "only 8 hours" prior to the March 21 meeting with the Panel that he could bring evidence – the Court finds this objection is (1) procedurally insignificant, and (2) a distortion of the extensive communications between Rosales, Bayer, and the Panel for months and weeks leading up to March 21, 2017. (See, e.g., Tr. Proc. at 62–69 (January 25, 2017 letter to Bayer); Tr. Proc. at 165–67 (February 14, 2017 letter to Bayer); Tr. Proc. at 175–77 (March 16, 2017 letter to McKetta); Tr. Proc. at 183–96 (email exchanges between Rosales and McKetta); Tr. Proc. at 197–98 (March 20, 2017 letter to McKetta).)

      The email Rosales refers to is an email from McKetta, sent on March 20, 2017 at 4:19 p.m., in which McKetta writes:

39

[. . .] The panel will be present tomorrow at 9:00 a.m. at [address], consistent with the formal notice you received a month ago. I will ask the panel to consider whether a failure to appear is a failure of your mandatory duty under Rule AT-7(f)(5), as I believe it is.

I expect you to attend, so that you may be questioned as to the matters set forth in the formal notice. You are also welcome tomorrow to present any additional evidence you may wish.

(Tr. Proc. at 196.) Rosales responded to that email on March 20, 2017 at 9:23 p.m., writing in part:

I hate to break the news to you, Mr. McKetta, but you do not overrule the United State Court of Appeals for the Fifth Circuit. [. . .] Obviously, you know the Order is full of errors and you do not want the Fifth Circuit to review it.

Tomorrow's event was not long-scheduled, as you have given me insufficient notice (less than 30 days) and provided me no rules, no procedure, no standard of proof, no evidentiary standards and BARELY NOTED THIS EVENING THAT I MAY PRESENT ADDITIONAL EVIDENCE.

THANK YOU FOR THE CLARIFICATION THE NIGHT PRIOR TO THE HEARING.

Your actions constitute gross abuse of power and a willingness to disregard the authority of the FRCP, the FRAP, and the USCA5. [. . .]

Of late, the Magistrates in the Austin Division are operating with a total disregard for the Federal Rules of Civil Procedure,

40

and the Rules of Judicial Conduct, INCLUDING making statements to the news media about ICE raids [. . .]

I will be more than happy to discuss these issues with the Chief Judge.   In the meantime, I will not allow you to violate my Rights of Due Process. [. . .]

(Tr. Proc. at 195 (emphasis in original).)   Earlier that same day, Rosales had also

written to McKetta at 4:05 p.m. stating: "As noted, I will not be attending the

meeting tomorrow as the Order is currently under review by the Fifth Circuit."   (Id.

at 196.)

Notably, all of the letter and email exchanges from Rosales to

McKetta in the weeks and days leading up to the March 21 meeting of the Panel

are comprised of this tone, writing style, and menacing language.[28]   (See, e.g., Tr.

Proc. at 183–96.)   The record undisputedly supports the Court's finding (and the

Final Report's finding) that Rosales, on February 21, 2017, was given sufficiently

---

[28] See, e.g., Tr. Proc. at 190–91 (email from Rosales to McKetta on March 16, 2017 at 1:38 p.m.: "I have informed the District Clerk, the Hon. Ms. Jeanette Clack of your lack of procedures and unwillingness to follow FRCP and Fifth Circuit precedent.   I will be happy to discuss my concerns with the Presiding Judge, as well as the Chief Judge of the Fifth Circuit.   Your response has been filed and sent to the appropriate authorities."); see also Tr. Proc. at 189 (email from Rosales to McKetta on March 16, 2017 at 3:11 p.m.: "You have also failed to provide me a copy of Mr. Bayer's appointment letter.   Does one even exist, that appoints him as the Chair of the Committee?   Do you mean to tell me that Mr. Bayer is operating without any type of Formal Appointment, whatsoever?   That seems to be par for the course, for a Committee with no Rules, no Procedures, no Training, and no Appointment Letters.").

timely and proper notice under Local Rule AT-7(f)(4) & (f)(5) of the Panel's

March 21, 2017 meeting, at which Rosales' attendance was specifically requested

to "(i) *present any further evidence you may wish* and also (ii) to be questioned by

the panel." (Tr. Proc. at 172 (February 21, 2017 letter from McKetta to Rosales)

(emphasis added); see also Tr. Proc. at 193 (February 21, 2017 email at 1:15 p.m.

from McKetta to Rosales, attaching aforementioned correspondence); Final Report

¶ 26F.)

Therefore, Rosales' objection that he was told for the first time and

"only 8 hours" before the March 21 meeting of the Panel that he could bring

evidence is (1) directly contradicted by the record, and (2) procedurally

insignificant in light of the extensive communications and notifications regarding

the March 21 meeting. Accordingly, this objection is **OVERRULED.**

II.   Jurisdictional Objections

G. Committee's Findings Outside of Federal Court Jurisdiction

Rosales argues that Judge Lane acted outside the scope of a federal

court's limited jurisdiction by "revisiting" a state court decision from six months

prior involving the granting of an *ex parte* TRO against Harrington. (See Resp't

Ex. 6.) According to Rosales, Judge Lane "criticized" the finding of the state

court, conducted a collateral attack, and then "overturned" the decision by the state

court to not award attorneys' fees to either party by, in fact, awarding attorneys'

fees to defense counsel in the Order.  Rosales characterizes this as an "overreach"
by Judge Lane.  Further, Rosales argues that the Disciplinary Committee "<u>is
continuing the jurisdictional overreach by now claiming that the State Court case
was bad faith litigation.</u>"  (Resp't Obj. ¶ G (emphasis in original).)

      Rosales' jurisdictional objections are unfounded.  Contrary to
Rosales' assertion, his misconduct in a state court proceeding is not outside the
reach of a federal court's disciplinary committee's review.  As the Final Report has
aptly already addressed, an attorney is not "immune from disciplinary action
because his misconduct occurred elsewhere." (<u>See</u> Final Report ¶ 26G.)  In fact,
and as the Final Report correctly indicates, Local Rule AT-7 expressly allows the
Committee to review, investigate, and ultimately recommend disciplinary
sanctions for, a range of attorney conduct that occurs in state *or* federal court, and
any conduct that violates the TDRPC, the latter of which governs Texas attorneys
in *any* forum.  (<u>See</u> Local Rule AT-7(c)(1) through (7).)

      Additionally, the Court has carefully reviewed Judge Lane's Order
and finds that he did not – contrary to Rosales' claim – improperly "revisit,"
"alter," "criticize," "collaterally attack," or "overturn" the state court TRO against
Harrington.[29]  In describing the procedural history of the six lawsuits, the Order

---

[29] Furthermore, and in any event, it should be noted that the May 20, 2016 *ex parte*
TRO sought by Rosales and issued against Harrington (Resp't Ex. 6) was itself

notes that, six days before a scheduled discovery hearing on the <u>Clark</u> defendant's motion to compel Deutsch's logbook, Rosales on May 20, 2016, filed an incident report with the Austin Police Department and obtained an *ex parte* TRO against Harrington in Travis County Court. (Dkt. # 135 at 8; <u>see</u> Dkt. # 25-1 at 2–6 in <u>Clark</u> ("Temporary *Ex Parte* Order"); Resp't Ex. 6.) The basis for the TRO was that Rosales alleged that Harrington was harassing, stalking, and making terroristic threats against him. (Dkt. # 135 at 8.) These allegations stemmed from a comment Harrington made to Rosales during a deposition that he knew Rosales drove an expensive car. (<u>Id.</u>; <u>see</u> Dkt. # 82-2 at 2–12 in <u>Clark</u> ("Application for Protective Order").)

After obtaining the TRO, Rosales on May 24, 2016, filed a motion for separate discovery hearing before Judge Lane, arguing that the protective order prevented Harrington from being within 200 yards of Rosales at any time. (Dkt. # 135 at 8; <u>see</u> Dkt. # 25 in <u>Clark</u>.) Upon learning of the TRO, Harrington sought emergency relief from the county court, which conducted an evidentiary hearing on the *ex parte* TRO, dissolved it, and denied Rosales' application for permanent protective order. (Dkt. # 135 at 8; <u>see</u> Dkt. # 82-4 at 2–96 in <u>Clark</u> (Harrington's "Emergency Motion to Modify or Dissolve Temporary *Ex Parte* Restraining Order"); Dkt. # 82-5 at 2 in <u>Clark</u> (Travis County Court Judge Mike Denton's

dissolved and dismissed by a state court judge on June 3, 2016 for lack of evidentiary support (Resp't Ex. 7).

order denying application for permanent protective order and dissolving May 20,
2016 *ex parte* TRO).)  Judge Lane also denied Rosales' motion for separate
hearing on May 24, 2016.  (See Dkt. # 26 in Clark.)

According to the Order, "[d]espite these hiccups," the discovery
hearing in the Clark case was conducted as scheduled on May 26, 2016.  (Dkt.
# 135 at 9; see generally Dkt. # 84 in Clark (transcript of proceedings).)  At the
hearing, Judge Lane warned Rosales regarding the possibility of sanctions for his
misconduct, stating in part: "Here's my warning to you.  I don't want all the
verbiage in [your] motions any more . . . We're going to have an evidentiary
hearing and you're going to have to back up what you say, and if you don't, I'm
going to apply sanctions."  (Dkt. # 135 at 9; see Dkt. # 84 at 51 in Clark.)  The
Court has independently reviewed the transcript of this hearing, in which Judge
Lane thoroughly addressed and questioned Rosales' application and grounds for
the TRO against Harrington, and asked Rosales several times to describe what laws
Harrington had violated and what Rosales perceived to be the threat to his life.
(See Dkt. # 84 at 49–57 in Clark.)  The Court finds that Judge Lane gave Rosales
ample opportunity to explain his extreme conduct, and Rosales – as Judge Lane
pointed out numerous times at the hearing itself – could not elucidate any credible
threats or violations of law, or any stalking or harassing conduct by Harrington.
(See id.)

Later, the Order indicates that – at the Show Cause Hearing conducted on September 13, 2016, to address Rosales' categories of sanctionable conduct – Harrington put on character and expert witnesses and submitted sworn character affidavits to refute Rosales' charges against him made throughout the litigation, including in multiple court filings as well as in the application for TRO. (Dkt. # 135 at 20–30; see generally "Hrg. Tr.," Dkt. # 133.) Several months later, in December 2016, the Order described this extensive factual and procedural background in imposing sanctions for Rosales' cumulatively brazen and "outrageous" misbehavior in the six ADA lawsuits. Providing precisely such a detailed summary of Rosales' conduct – including his conduct in obtaining the state court TRO against opposing counsel on baseless grounds of criminal stalking – in order to impose sanctions for said conduct, does not constitute judicial overreach, nor does it present jurisdictional defects.

Judge Lane imposed sanctions under the court's inherent powers and under Rule 11(c)(3) because the evidence he meticulously described in the Order "overwhelmingly establishes Rosales' various bad faith conduct." (See Dkt. # 135 at 31–33, 40.) In fact, after providing a detailed factual and procedural background of Rosales' and Harrington's conduct for much of the previous year, Judge Lane's Order then dedicated over fifteen additional pages to describing his findings of bad faith conduct as evidenced by Rosales' (1) twenty-nine knowingly false and

abusive statements against Harrington, repeated in 113 court filings (see, e.g., Dkt. # 135-1 at 1–3); (2) submission of fabricated evidence to the court; (3) baseless criminal stalking charges against Harrington and *ex parte* TRO as a result; and (4) multiple violations of the TDRPC. (See Dkt. # 135 at 33–49.)

A "district court's imposition of sanctions may be reviewed under either Rule 11, 28 U.S.C. § 1927, or its inherent powers for an abuse of discretion." Arnold v. Fed. Nat'l Mortg. Ass'n, 569 F. App'x 223 (Mem.) (5th Cir. 2014) (citing cases). The undersigned highlights this standard because a court must be clear as to the basis for sanctions imposed under each authority. See id. For example, a court may not impose sanctions under Rule 11 by *sua sponte* order unless the court issues a show cause order under Rule 11(c)(3) and unless "the 'attorney, law firm, or party' receives 'notice and reasonable opportunity to respond.'" Marlin v. Moody Nat'l Bank, N.A., 533 F.3d 374, 377–78 (5th Cir. 2008). As Judge Lane noted in the Order, and this Court reaffirms based on its review of the record, Rosales was at all times provided his procedural due process rights prior to sanctions being imposed against him under Rule 11(c)(3) by the

court's own initiative.[30]

Additionally, sanctions under a court's inherent powers require a "specific finding that the [party or individual] acted in bad faith." Crowe v. Smith, 151 F.3d 217, 236 (5th Cir. 1998). Again, Judge Lane outlined the procedural history of the six lawsuits involving Rosales and Harrington, made specific bad faith findings regarding discrete categories of Rosales' sanctionable conduct, and then imposed sanctions accordingly, including allowable attorneys' fees to the moving party, Harrington. See Marlin, 533 F.3d at 378 (stating that sanctions "'may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation'" (quoting Fed. R. Civ. P. 11(c)(4) (emphasis added))). The fact that Judge Lane permissibly imposed reasonable

---

[30] Given the Court's independent examination of the record, this Court adopts Judge Lane's accurate description of the procedural due process afforded Rosales prior to the imposition of sanctions (see Dkt. # 135 at 40):

> [T]he court warned Rosales multiple times of the possibility of sanctions, conducted a preliminary hearing on potential sanctions, issued a show cause order specifying the alleged sanctionable conduct, allowed Rosales time to respond to the allegations, and held a show cause hearing at which Rosales was free to testify and provide evidence in his defense.

attorneys' fees as a sanction against Rosales when the state court judge did not does not in any way mean that Judge Lane acted extra-jurisdictionally.

Therefore, the Court finds that Judge Lane's Order did not impose sanctions improperly, on unsubstantiated grounds, or outside the court's jurisdiction. Furthermore, in awarding these sanctions, Judge Lane did not "overrule," "collaterally attack," or "overturn" the state court TRO, which was itself almost immediately dissolved after its issuance by a state court judge. Rather, Judge Lane merely described the state court proceedings and *ex parte* TRO sought by Rosales against Harrington as one egregious example (out of many) that merited the imposition of sanctions. This analysis is firmly within the court's jurisdiction, and the district judges in the respective six cases affirmed the Order. (See, e.g., Dkts. ## 143, 144; supra, footnote 11.) Thus, the Court **OVERRULES** Rosales' objections that the Final Report's findings regarding his misconduct are judicial overreach and outside of the Court's (and the Committee's) jurisdiction.

III.    Purposeful Omissions by the Committee

H.    Committee Ignored Misconduct by Harrington

Rosales contends that the Committee ignored the fact that Harrington allegedly attacked Deutsch and Rosales in pleadings "a total of 384 times." (Resp't Ex. 8.) Rosales states that most of Harrington's statements came before Rosales sought a protective order against Harrington in state court. However, per

Rosales, the Committee "purposely ignored" these statements of "insults, bigotry, slander, and provocative comments" made by Harrington. (Resp't Obj. ¶ H.)

This objection is **OVERRULED.** First, as the Final Report notes, Rosales "cannot choose to use disruptive and fraudulent tactics that are destructive to administration of justice and then cry foul when the opposing lawyer forcefully responds." (Final Report ¶ 24b.) The Court agrees. The undersigned has reviewed the record and has determined, much like the Panel, that none of Harrington's motions or responses, arguments at hearings conducted by Judge Lane, or email correspondence with Rosales, show "any conduct . . . that itself was in violation of professional disciplinary standards nor any conduct . . . that would tend to warrant mitigation of Rosales' discipline for" his own misconduct. (See id.) The Court also highlights here that the Referral was distinctly and only made in regards to Rosales' behavior, so that is precisely what the Panel, and more broadly the Committee, investigated. (See Dkt. # 135 at 49 ("The undersigned finds it appropriate that an objective body review the *actions of Rosales* in this matter.") (emphasis added).)

Further, reviewing Rosales' citations to the alleged "384 times" Harrington "attacked" him, the Court concludes that Rosales' claim that Harrington acted with unclean hands or misbehaved seriously misconstrues Harrington's comments. (See Resp't Ex. 8 ("Improper Comments Made by Jim

50

Harrington Since Feb. 2016").) Rosales' list of allegedly improper comments made by Harrington includes, but is not limited to, that plaintiff's counsel: "has acted unprofessionally;" "[is] discourteous and bullying;" "makes threats and personal attacks;" "[is] devoid of professionalism;" "ethically unconscionable;" "use of extraordinary unprofessional language;" "poorly drafted discovery;" and "unabated onslaught of filing pleadings." (See id.) If these had been groundless, random, or *ad hominem* comments by Harrington, viewed in isolation it would certainly *appear* that they "attack" Rosales' credibility as an attorney.

However, viewed in the proper context of the entirety of the proceedings before Judge Lane across six lawsuits and almost a year's worth of motion practice – including emergency and evidentiary hearings and multiple sanctions motions filed by both sides – the Court finds that Harrington's comments cannot be characterized as sanctionable "misconduct," or even as untrue. Rather, Harrington's alleged comments, as referenced and listed in respondent's exhibit, simply represent Harrington's attempts at describing to, putting on notice, and persuading the presiding judge in written pleadings of his opposing counsel's misbehavior, false allegations, and unfounded attacks against Harrington's own character. As previously discussed, Rosales' repeated, threatening, and unprofessional sanctionable conduct was not warranted by Harrington's conduct in these proceedings, nor will the Court assess Rosales' misbehavior through the

51

lens of Harrington's conduct, especially where there is no basis in the record to do

so. Accordingly, the objection is **OVERRULED.**

> I. Committee Ignored State Bar's Investigation of Harrington for
> Misconduct and Ignored that Harrington Called Rosales "El Sapo"

Rosales similarly argues that the Committee ignored the fact that

Harrington was under investigation by the Texas State Bar for over six months

(Resp't Ex. 9), an investigation that focused on Harrington's misconduct

"including stalking, symptoms of schizophrenia, witness tampering, and

unprofessional conduct." This objection also claims that the Committee ignored

the fact that Harrington "sent a racially-tinted email to Rosales where Harrington

and his assistant were calling Rosales 'El Sapo.'" According to Rosales, he

reported the incident and asked Judge Lane to admonish Harrington, but Judge

Lane "refused, saying he had no idea that the term 'El Sapo' was offensive."

(Resp't Obj. ¶ I (emphasis in original).)

The Court **OVERRULES** this objection to the extent it has already

addressed the substance of Rosales' similar argument regarding Harrington's

purported misconduct in Discussion.III.H, supra. To the extent this objection

presents a new argument on the topic of Harrington – that the Committee

improperly ignored the Texas State Bar's investigation into Harrington – the Court

finds that this objection is wholly irrelevant to the Panel's (1) preparation and

submission of its Initial and Final Reports, and (2) final findings and
recommendations as to Rosales being disbarred.

In support of this objection, Rosales submitted as an exhibit a letter
from the Office of the Chief Disciplinary Counsel of the State Bar of Texas, dated
August 9, 2016, which confirms to Rosales that the office is in receipt of his
"grievance" or "complaint" filed against Harrington for allegations of professional
misconduct or a disability, or both.  (See Resp't Ex. 9.)  However, this letter
merely serves as evidence that Rosales, in his apparent attempt to discredit
Harrington's character even further, filed and initiated a disciplinary complaint
himself against Harrington with the state bar.  (See id.)  Further, as the Final
Report correctly mentions, Rosales provided no evidence to the Panel (or to this
Court) that "the State Bar has made any adverse findings or imposed any discipline
on the opposing counsel."  (See Final Report ¶ 26I.)  Accordingly, this objection is
**OVERRULED** as to any allegations the Committee "ignored" Harrington's
"misconduct."

This objection also addresses the "El Sapo" email.  Contrary to
Rosales' repeated claims, the Final Report expressly points out that the "evidence
is very clear that Mr. Harrington did *not* call Mr. Rosales 'El Sapo.'"  (See id.
(emphasis in original).)  Judge Lane also came to the same reasoned conclusion at

the Show Cause Hearing in September 2016[31] and later reiterated this position in

the Order imposing sanctions.[32]   The Court has independently verified the relevant

email correspondence, exhibits, motions, and hearing transcripts on this matter and

agrees.   The Court finds that there is no dispute that Harrington did not call

Rosales "el sapo."   The following is a summarized chronology of the "El Sapo"

comment, condensed from the Order and the Final Report, the underlying sources

of which have been reviewed and verified by the Court.

---

[31] Judge Lane said: "You continue to bring up this sapo reference that was in an e-mail attachment.  First of all, Mr. Harrington never called you a sapo, ever, as I understand it.  And to the extent a staffer [sic] member did and it was in an e-mail, they apologized to you . . . I cannot levy sanctions on something like that on unless you want to move forward with the motion for sanctions, and you decided not to do so.  That was your decision to make, not mine."  (Hrg. Tr. at 13; see also Hrg. Tr. at 18 ("Mr. Harrington, as best as I can see, never has used that term.  It was simply in an e-mail that was attached that one of his staffers called you that.").)

[32] Judge Lane wrote: "[T]he court believes it is unprofessional to refer to someone as a toad, and had Defendants made that reference in a court filing, the court may have ordered them to strike it.  [T]he court's point is that Rosales' attempt to defend his twenty-nine unique ad hominem attacks against Harrington, which he submitted in 113 separate court filings, by pointing to Valdez-Payan's reference to him as el sapo is preposterous.  By its nature, our judicial system is adversarial, litigation is often contentious, and people make mistakes and say things they do not mean, or at least do not mean to say aloud.  Harrington's inadvertent forwarding of an e-mail where Valdez-Payan referred to Harrington by the Spanish word for toad was such a mistake.  And, like the respected professional Harrington is, he apologized to Rosales immediately upon learning of this mistake."  (Dkt. # 135 at 35–36.)

On March 25, 2016, an internal email was sent by Aura Valdez-Payan, a legal assistant at TCRP, to Harrington, which referred to Rosales as "el sapo." (Hrg. Tr. at 192–202 (testimony of Valdez-Payan at Show Cause Hearing); see also Dkt. # 67-1 ("el sapo email").) Harrington inadvertently forwarded this email to Rosales, and the email was the basis for Rosales filing a "Motion for Sanctions: Racial Slur Used by Defense Counsel and His Staff" three months later on June 20, 2016, which was filed across all six lawsuits. (Dkt. # 67.) The motion alleged that Harrington and a member of Harrington's staff called Rosales a racial slur and requested the Court refer Harrington to the state bar. (Id.) Harrington responded to the motion the very next day, stating that he did not realize that he had mistakenly forward Valdez-Payan's email to Rosales until Harrington received Rosales' motion. (Dkt. # 68.)

In Harrington's response motion, he copied the email he sent to Rosales immediately upon realizing his mistake, in which he apologized: "I regret you got this inadvertently. And I apologize." (Id.) In the responsive motion, Harrington also pointed out that he himself never referred to Rosales by that term; rather it was used by a TCRP employee who is Mexican-American. (Id.) Finally, Harrington maintained that, while the use of "el sapo" was meant literally – as the Spanish word for "toad" – it did not have racial or ethnic connotations, particularly since, among other things, Harrington has worked in and for the Hispanic

55

community for 50 years. (Id.) Moreover, Harrington stated that he has three adult children who are half-Hispanic and married to Hispanic individuals, and he has eight Hispanic grandchildren—thus, "[a]ny sort of racial slur, even the slightest, is anathema to him." (Id.)

Because Rosales' sanctions motion was one of many motions filed during this time period – including Rosales' additional sanctions motion and a motion for gag order, as well as Harrington's own motion for sanctions – Judge Lane scheduled these motions for a hearing on August 3, 2016. (Dkt. # 135 at 13; see Dkts. ## 77, 102 (transcript).) At the August 3 hearing, Rosales appeared alone for the Plaintiff's side, even though Defendants had issued a subpoena for Deutsch's attendance. (Dkt. # 135 at 14.) Harrington appeared for Defendants along with Charles Herring ("Herring"), the latter as conflicts counsel for the sanctions motions. (Id.) At this hearing, Judge Lane notified the parties that an evidentiary hearing on the sanctions motions would follow if the parties wanted to pursue their claims. (Dkt. # 102 at 6.) Judge Lane also explained that the purpose of the August 3 hearing was essentially a "preliminary hearing," to allow the parties to argue the bases for the multiple motions filed and to sort out which issues would be the basis for the Show Cause Order that would (and did) subsequently issue in preparation for the Show Cause Hearing on Rosales' sanctionable conduct. (Id.)

According to Judge Lane, at the August 3 hearing, Rosales "struggled to articulate any legitimate factual or legal grounds" for his motions. (Dkt. # 135 at 14.)  For example, the record showed Rosales requested a gag order in a case that did not involve juries, and where – to the extent Harrington had spoken to the media – it was solely to relay facts about the case.  (Id. at 14–15; see also Dkt. # 102 at 33–37.)  Additionally, Rosales' claim that Harrington's noticing of a deposition at a Mexican restaurant in the Draker case was "racist" was refuted since the restaurant was the very restaurant Rosales' client sued for ADA violations.  (Dkt. # 135 at 15; see also Dkt. # 102 at 13, 48; Hrg. Tr. at 22–24, 86–88 (discussed at Show Cause Hearing, as well).)  In light of the lack of evidence to support his motions, Judge Lane offered Rosales an opportunity to withdraw his motion for gag order and two sanctions motions against Harrington for alleged racial slurs and abusive statements, and Rosales did so in each case in which they were filed.  (See, e.g., Dkt. # 93.)

However, the "el sapo email" situation was again thoroughly discussed at the September 2016 Show Cause Hearing because Rosales' claims that Harrington was "racist and abusive" towards Rosales (on the basis of this one email that Harrington did not write) formed the foundation for the Show Cause Order describing specific categories of Rosales' sanctionable conduct that would be addressed at the Show Cause Hearing.  (Dkt. # 135 at 16–18, 20–30; see Show

Cause Order at 6; Hrg. Tr. at 13–14, 18, 20, 37, 32–46 (Torres testimony), 192–205 (Valdez-Payan testimony).) Simply put, pursuant to Judge Lane's extensive review, the Panel's investigation and findings, and this Court's independent review, the Court finds that – again, contrary to Rosales' continued and false assertions – Harrington *did not* refer to Rosales as "el sapo." See also Mercury Air Grp., Inc. v. Mansour, 237 F.3d 542, 548 (5th Cir. 2001) ("[T]he imposition of sanctions is often a fact-intensive inquiry, for which the trial court is given wide discretion.").

Moreover, to the extent Valdez-Payan's comment could (and was) attributed to Harrington, Harrington apologized immediately upon noticing his mistaken forwarding of the email. This incident then became, astoundingly, one of the bases for Rosales' manifold and repeated groundless claims that Harrington had made racial, abusive, anti-Semitic, and demeaning comments against Rosales, and further, that Harrington needed medical treatment, was "hearing angels," and "treats Hispanics like servants and 'noble savages.'" (See Hrg. Tr. at 13, 14, 18 (Judge Lane's similar conclusion); Dkt. # 135 at 34–36 (same); Dkt. # 135-1 at 1–3 (Appendix: "List of Sanctioned Statements").) The Court finds, similar to Judge Lane's *and* the Panel's finding, that there is absolutely no evidence in the record to support Rosales' allegations regarding Harrington's conduct, statements, or behavior. Accordingly, this part of the objection is also **OVERRULED.**

J.   Committee Ignored Burden of Proof Error by Judge Lane

Rosales also argues that the Committee ignored the fact that Judge

Lane made a "major mistake" as to the burden of proof, claiming that it was up to

Rosales to prove himself innocent.  Rosales cites to an excerpt of the Show Cause

Hearing transcript, wherein Judge Lane stated: "The fact that you don't want to

exonerate yourself . . ."  (Resp't Ex. 10 at 212, timestamp: 15:26:19.)  Based on

this excerpt, Rosales argues that, in a sanctions hearing, Plaintiff's counsel does

not have to exonerate himself and prove himself innocent.  (Resp't Obj. ¶ J.)

This objection is **OVERRULED**—Judge Lane made no mistake

regarding the so-called "burden of proof" comment, and the Committee did not

"ignore" any such "mistake."  First, to the extent Judge Lane's comment – which

was taken out of context – can even be construed as referring to some sort of

burden of proof, he was correct.  "While normally a movant would bear the burden

of proof and persuasion on a motion," at a show cause hearing conducted under the

auspices of Rule 11(c)(3), the purpose – pursuant to the rule – is for the court to

"*order an attorney*, law firm, or party *to show cause why conduct* specifically

described in [a show cause] order *has not violated Rule 11(b)*."  Margetis v.

Furgeson, Case No. 4:12-cv-753, 2015 WL 6688063, at *5 n.31 (E.D. Tex. Sept.

29, 2015) (emphasis added) (internal quotations omitted).  Judge Lane issued the

August 2016 Show Cause Order precisely to put Rosales on notice of the five

59

distinct categories[33] of his sanctionable conduct that would be addressed at the

Show Cause Hearing in September 2016 and at which time Rosales would be given

the opportunity to provide evidence and testimony regarding his conduct.  (See

generally Show Cause Order.)  Rule 11 explicitly allows for a court to order an

attorney to explain why his conduct has not violated Rule 11(b), which necessarily

implies that the attorney has a burden of arguing why his conduct should not be

sanctioned.  Therefore, this was permissibly Rosales' task at the Show Cause

Hearing.

Regardless, viewed in context and not in isolation, Judge Lane's

comment was not referencing – contrary to Rosales' objection – any sort of burden

of proof.  Several times during the Show Cause Hearing, Judge Lane simply stated

that he was surprised Rosales would be opposed to allowing Yahoo to be

subpoenaed because it could potentially "exonerate" Rosales from Harrington's

charges (supported by expert testimony) that Rosales fabricated an email attached

as an exhibit.  (See Hrg. Tr. at 11, 116, 212.)  The "exonerate yourself" comment

made by Judge Lane was thus made in the context of a discussion regarding

---

[33] Judge Lane wrote: "The undersigned finds the following alleged conduct
implicates potential sanctions and will be subject to review at the hearing: (1) false
and abusive statements, (2) fabricated email, (3) Mr. Rosales' criminal-stalking
charge and related allegations against Mr. Harrington, (4) the Motion for Separate
Hearing, and (5) violations of the disciplinary rules."  (Show Cause Order at 5.)

Rosales' fabricated email, which was one of the categories of sanctionable conduct that was specifically designated to be addressed at the Show Cause Hearing.

Therefore, the Court finds that Judge Lane was merely commenting that it was surprising that Rosales objected to compelling Yahoo to produce his email records because if – as Rosales claimed – he did in fact write the challenged email, it would seem like Yahoo's records could "exonerate" the charge of fabrication against him. Furthermore, as the Final Report notes, the Panel "made its independent findings from the evidentiary record [and] Judge Lane's burden of proof error, if any, had no impact on the panel's findings." (See Final Report ¶ 26J.) Additionally, Judge Lane's Order made clear that his sanctions decisions were supported by "clear and convincing evidence" and "bad faith" findings, which are the proper standards to impose sanctions, as discussed in Discussion.II.G, supra. Accordingly, Judge Lane made no "mistake" regarding the burden of proof, and this objection is **OVERRULED.**

### K. Committee Did Not Attempt to Find Useful Solution

Rosales objects to the Final Report because the Committee "never made an attempt to find a solution to the dispute between Harrington and Rosales." According to Rosales, the Committee "could have easily recommended CLE, attorney-supervision, or a probationary period," but instead, the Committee followed the Order to a tee: "disbarment and beyond." Rosales alleges that the

Committee even recommends actions outside the scope of Local Rule AT-7,

including "publicly shaming Rosales." (Resp't Obj. ¶ K.)

   The Court **OVERRULES** this objection, and adopts the Final

Report's characterization of this objection:

> Remarkably, Mr. Rosales objects that the panel did not reach
> out to mediate the dispute between Mr. Rosales and his
> opposing counsel. This misplaced objection is consistent with
> Mr. Rosales' approach through this process to refuse to take
> responsibility for properly addressing problems he created, to
> undertake conduct violative of the Code of Professional
> Responsibilty and applicable Rules, and to defy cooperating
> with the Panel's efforts.

(See Final Report ¶ 26K.) The Court only adds that the Committee is required to

investigate referrals under Local Rule AT-7, and this is precisely what it has done.

(See, e.g., Local Rule AT-7(b) (the District Disciplinary Committee "assists the

district court and bankruptcy court in investigating complaints about the

qualification, conduct, and performance of members of their bar").)

   The Initial and Final Reports the Panel prepared recommend

disbarment from the Western District of Texas, and for this disbarment

recommendation to be provided to the Texas State Bar, among other disciplinary

measures. (See id. ¶ 25.) As previously discussed, the Panel came to this

conclusion through its independent investigation and review of the evidentiary

record and *despite* Rosales' failure to cooperate.  Accordingly, the Panel did not in any way blindly "follow" the Referral "to a tee."

Finally, the Initial and Final Reports cannot be construed as condoning or recommending "public shaming."  Rather, the Committee recommends that a copy of the Court's instant order on the matter be delivered or posted to, *inter alia,* (1) federal district courts to which Rosales is admitted to practice, (2) the Office of the Chief Disciplinary Counsel of the Texas State Bar, (3) the website of the Western District of Texas, and (4) every client of his, in order to make these entities or individuals aware of Rosales' serious misconduct and disciplinary violations and the resulting consequences of his actions (*i.e.* disbarment from the Western District of Texas).  (See id.)  These recommendations are, of course, permissible to protect the integrity of the justice system and the orderly administration of justice, of which lawyers are integral and active participants, not to "publicly shame" Rosales.  See, e.g., Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978) ("[T]he operation of the judicial system itself [. . .] is a matter of public interest.").  Therefore, this objection is **OVERRULED.**

IV.    Additional Errors by Panel; Objections to Final Recommendations

    L. Panel is Commenting on Cases Outside of the Referral

Rosales maintains that the Committee is "also commenting on cases that are outside" of the Referral, and that the Committee cannot "dig up" old cases in an effort to punish Rosales.  (Resp't Obj. ¶ L.)

Much like the Panel indicated in the Final Report, this Court "does not know what this objection refers to."  (See Final Report ¶ 26L.)  This Court has reviewed the entirety of the record, the dockets in the six underlying cases, the Initial and Final Reports, and the two sets of objections submitted by Rosales to the same, and cannot determine where, when, or how the Panel – or the Committee more broadly – "commented on cases outside of the Referral."  Accordingly, this objection is **OVERRULED.**

    M. Panel Recommends Punishment Outside Range of Local Rules

Rosales argues that the Committee's Final Report recommends a punishment that is outside the scope of the punishment range of Local Rule AT-7.  According to Rosales, the "maximum punishment is a 2-year suspension."  But, per Rosales, the Committee's Final Report goes beyond that and recommends a "public shaming, publishing of the order, distribution of the order on the Western District of Texas website, ordering that Rosales distribute the order to all future

clients, and advising the presiding judge to file a criminal complaint." (Resp't Obj. ¶ M.)

The Court **OVERRULES** this objection to the extent it has already addressed the substance of Rosales' similar argument about "public shaming" in Discussion.III.K, supra.  To the extent this objection presents a new argument – that the Committee's recommended disciplinary measure, disbarment, is precluded by Local Rule AT-7 – that contention is also **OVERRULED.**  Local Rule AT-7 does not provide, explicitly or implicitly, that "a maximum punishment is a two-year suspension."

Local Rule AT-7(f)(6) merely provides that, "[a]fter investigation[,] the panel will render a report and recommendation as to whether the respondent committed any violation and what disciplinary action, if any, should be imposed."  Further, Local Rule AT-7(f)(7) allows for modification of the Initial Report after receiving objections from the respondent attorney, but modifications are not required: "The panel, after considering the [attorney's] response, may modify, amend, revoke, or adhere to its original recommendation and will so inform the committee chair."  Then, pursuant to Local Rule AT-7(g), the Final Report and any objections submitted by the respondent attorney, are to be considered by the district court, which is what the instant order undertakes.  "The judge's decision as

to whether disciplinary action is warranted, and what sanction to impose, is a final ruling of the court." <u>See</u> Local Rule AT-7(g).

These provisions clearly allow for the consideration of proper disciplinary measures, including but not limited to disbarment, in proportion to disciplinary violations found, if any.  There is no mandated disciplinary measure or punishment mentioned anywhere in the rule, nor is there a maximum punishment contemplated or required.  Simply, as the Final Report correctly indicates, "[d]isbarment is clearly contemplated by Rule AT-7," and based on its investigation, the Panel stated that Rosales' "extensive and repeated misconduct, his refusal to express contrition, and his refusal to cooperate in the disciplinary process convince the panel that no sanction short of disbarment would adequately protect (i) his current and future clients, and (ii) the administration of justice." (<u>See</u> Final Report ¶ 26M.)  This was a permissible conclusion to draw and recommendation to make.

Finally, because the Final Report recommends disbarment from the practice of law in the Western District of Texas, this Court must find – if it chooses to adopt this recommendation in full – by "clear and convincing evidence," <u>NASCO, Inc.</u>, 894 F.2d at 708, and on the basis of "bad faith" findings, <u>In re Thalheim</u>, 853 F.2d at 389, that disbarment should result.  Pursuant to Local Rule AT-7(g), the Court makes precisely these findings in the analysis section directly

following Rosales' objections to support the undersigned's imposition of sanctions. (See Discussion.V ("Court's Concluding Analysis"), infra.) Thus, this objection is **OVERRULED.**

### N. Alleged Violation of TDRPC Rule 3.01

Rosales states that the Committee has no authority to comment on the findings of a separate judicial tribunal, specifically the state court's decision regarding granting the TRO. Per Rosales, the Committee "cannot now overturn that order and claim it was issued in bad faith." (Resp't Obj. ¶ N.)

The Court **OVERRULES** this objection to the extent it has already addressed the substance of Rosales' similar argument in Discussion.II.G., supra, regarding the state court TRO and the Panel's and the Court's "jurisdiction" to make findings based on Rosales' conduct in that forum. To the extent this objection presents a new argument – that the Panel cannot or should not have found a violation of TDRPC Rule 3.01 – the Court disagrees. As the Final Report makes clear, "the panel found from the evidentiary record that Mr. Rosales' conduct in the state court action was an improper tool to abuse his opposing counsel, involving violations of [*inter alia*] Rule[ ] 3.01 [. . .] of the Texas Disciplinary Rules of Professional Conduct." (See Final Report ¶ 26N (citing ¶ 24c).)

The Court adopts this position as well, finding that Rosales violated TDRPC Rule 3.01 by asserting several issues in the six ADA lawsuits without a reasonable belief that a non-frivolous basis existed for those issues. For instance, Rosales' filing of a criminal complaint of a "terroristic threat" by Harrington (Dkt. # 122-2 at 179, Ex. 50), and filing of an *ex parte* TRO in a Travis County Court at Law to protect him from Harrington's alleged "erratic" stalking, harassment, and intimidation (Dkt. # 122-1 at 62–72, 94–102, Ex. 14), were filed without reasonable belief that non-frivolous bases existed for those issues. As the record makes clear, no evidence supports or supported any good faith allegation that Harrington engaged in any "terroristic" threat or that he stalked Rosales or was acting irrationally, as alleged in those matters. In fact, at the state court evidentiary hearing addressing Rosales' application for permanent protective order, wherein the TRO was dissolved and the application was denied, Rosales *admitted* that he had never seen Harrington near his home, near his car, and near his work—in direct contravention to Rosales' sworn affidavit submitted with his application for protective order. (Compare Dkt. # 122-2 at 96–156, Ex. 45 (Protective Order Hearing Transcript), with Dkt. # 122-1 at 94–102 (Rosales Aff.), Ex. 14.)

Accordingly, and for all of the reasons set forth in this Order, the Court **ADOPTS IN FULL** the Final Report's finding that Rosales violated TDRPC Rule 3.01 (see also Final Report ¶ 13) and **OVERRULES** this objection.

### O. Alleged Violation of TDRPC Rule 3.02

Rosales argues that the Committee cannot sanction Rosales for filing valid motions under the FRCP, including a motion for "adverse inference [sic]" and motion for separate hearing. (Resp't Obj. ¶ O.) This objection is **OVERRULED** and the Court **ADOPTS IN FULL** the Final Report's finding that Rosales violated TDRPC Rule 3.02 (see also Final Report ¶¶ 14, 26O). The evidentiary record makes clear that Rosales, throughout the litigation in the six ADA matters, took positions that unreasonably increased the costs and unreasonably delayed the resolution of those matters by, *inter alia*, filing (i) multiple baseless sanctions motions against Harrington, (ii) the motion for separate hearing, and (iii) failing to comply with court orders to make witnesses available for depositions.

### P. Alleged Violation of TDRPC Rules 3.03, 3.04

Rosales maintains that he has "already explained that the email was sent in error, [and] [a]s soon as the error was discovered, Rosales took steps to rectify the situation by filing a voluntary dismissal. Rosales argues that the Committee cannot discipline Rosales if he took immediate steps to correct a mistake. (Resp't Obj. ¶ P.) This objection is **OVERRULED** and the Court **ADOPTS IN FULL** the Final Report's finding that Rosales violated TDRPC Rules 3.03 and 3.04 (see Final Report ¶¶ 15, 16, 24e, 26P). It is preposterous and

astounding to this Court, in light of all of the contravening expert testimony, evidentiary records, and Judge Lane's explicit finding, that Rosales continues to assert that the fabricated email was "actually sent in error." In fact, the record makes clear that Rosales doctored and fabricated an email in the Clark case,[34] attached it as evidence in purported support of his response to Harrington's motion to compel Court-ordered depositions,[35] and then provided false evidence to the Court regarding the circumstances of that email. Furthermore, as the Final Report indicates, Rosales has provided no evidence – either to Judge Lane or the Panel – to support the claim that the email was sent "in error."

On May 27, 2016, Judge Lane had ordered Rosales to furnish two witnesses for depositions in the Clark case within 30 days. (Dkt. # 30 at 5 in Clark.) Harrington filed a motion to compel on July 1, 2016, noting that the two depositions had been notice and scheduled for June 24, but both witnesses and Rosales failed to appear without justification. (Dkt. # 56 in Clark.) In response, on July 8, 2016, Rosales filed a brief that stated that he had repeatedly attempted to comply with scheduling the depositions, but that opposing counsel (Harrington) had never replied to email offers. (Dkt. # 62 in Clark.) Rosales attached as an

---

[34] Dkt. # 62-4 at 2 in Clark (fabricated email); see also Dkt. # 122-2 at 61, Ex. 28 (within Show Cause Hearing exhibits).

[35] See Dkts. ## 56 (Harrington's motion to compel), 62 (Rosales' response in opposition, attaching fabricated email) in Clark.

exhibit an email he purportedly sent to Harrington on June 22, 2016 at 3:25 p.m. stating: "Mr. Harrington, Once again, I have asked you 3 times to provide Deposition dates to complete the depos for Chris Clark and Roni Clark.  Please provide me some dates and identify a suitable location."  (Dkt. # 62-4 in <u>Clark</u>.)

Thereafter, on July 25, 2016, Harrington filed motions for sanctions across all six lawsuits, but in the <u>Clark</u> case, Harrington added an additional allegation: that Rosales had fabricated the June 22 email.  (Dkt. # 68 in <u>Clark</u>.) Harrington stated that he had no record of ever receiving the disputed email or any of the other email requests to complete the required depositions.  (<u>Id.</u> at 7.) Furthermore, Harrington stated that he obtained the email server logs from the University of Texas, which hosts his email account, to check all emails received at his address from 1:00 p.m. until 12:00 a.m. on June 22, 2016, and the logs showed that Harrington did not receive any emails from Rosales during that time frame. (<u>Id.</u>)

Finally, Harrington offered screenshots of the changes that appeared when he copy and pasted the PDF version of the disputed email into a Word document, noting that the "To:" and "Date:" fields changed from his email address and the date of Wednesday, June 22 to Rosales' email address (talon_eye@yahoo.com) and the date of Friday, July 8, 2016 at 4:22 p.m.  (<u>Id.</u> at 8.)  Forensic expert testimony at the Show Cause Hearing, which Judge Lane

found credible in light of all the other testimony and evidence (including the
expert's report and character affidavits filed on behalf of Harrington), confirmed
that the email was fabricated by Rosales when he created a new blank email
addressed to himself and manipulated the data and the fields to make it appear like
(i) it was created on June 22, and (ii) it was Harrington, not Rosales, who held up
the depositions. (See Hrg. Tr. at 163–190.) Moreover, when confronted with this
evidence, Rosales invoked his Fifth Amendment right not to give testimony
regarding the email because "I'm not going to self-incriminate myself." (See id. at
208–09.)

        In line with Judge Lane's Order and the Final Report, and supported
by the entirety of the record and the Show Cause Hearing, this Court concludes
that Rosales fabricated the June 22 email, which was material to the pending
motion for sanctions against him for non-compliance with producing witnesses for
the Court-ordered depositions. He did not send the email "in error." Therefore,
Rosales clearly violated TDRPC Rules 3.03 and 3.04 by making false statements
of material fact to the court, failing to disclose facts necessary to avoid assisting a
fraudulent act, knowingly offering false evidence, falsifying evidence, and failing
to take corrective measures, including disclosure of true facts.

Q. <u>Alleged Violation of TDRPC Rule 3.04(c)(5)</u>

Rosales challenges the Committee's authority to comment on the findings of a separate judicial tribunal, specifically the finding of the state court in granting the TRO against Harrington.  According to Rosales, the Committee cannot now overturn that order and claim it was frivolous.  (Resp't Obj. ¶ Q.)  For the reasons already discussed, this objection is **OVERRULED** and the Court **ADOPTS IN FULL** the Final Report's finding that Rosales violated TDRPC Rule 3.04(c)(5) by, *inter alia*, engaging in conduct – such as taking out the TRO against Harrington in state court – clearly intended to disrupt the civil ADA proceedings, especially as evidenced by the fact that Rosales filed a motion for separate hearing in light of the protective order.  (<u>See</u> Final Report ¶¶ 17, 26N, 26Q.)

R. <u>Alleged Violation of TDRPC Rule 4.04(a)</u>

Rosales maintains that the Committee "purposely ignores" the misconduct by Harrington, including 384 times where Harrington allegedly said Plaintiff Deutsch and Rosales, were, among other things: "reprehensible," "grossly unprofessional," and "Deutsch/Rosales scam."  Per Rosales' objection, the Committee "cannot ignore the actions by one attorney, and then seek to punish the other attorney for defending himself," including by Rosales' reporting the incidents and misconduct, effectively being a "whistleblower."  (Resp't Obj. ¶ R.)  For the reasons previously discussed, this objection is **OVERRULED** and the Court

**ADOPTS IN FULL** the Final Report's finding that Rosales violated TDRPC Rule 4.04(a) by using means with no substantial purpose other than to embarrass, defame, and humiliate Harrington. Numerous instances are described in the Order and listed in the Order's Appendix of Sanctioned Statements, and include repeated false and abusive statements and "name-callings," frivolous motions, fabricated evidence, and initiation of criminal charges against Harrington to gain tactical advantage in the civil ADA proceedings. (See, e.g., Dkt. # 135-1 at 1–3.) (See Final Report ¶¶ 18, 26H, 26R.)

    S. Alleged Violation of TDRPC Rules 4.04(b)(1), 8.04(a)(3)

    Rosales insists that the Committee has no jurisdiction over proceedings in state court, and that Rosales has First Amendment freedom of speech and the Constitutional right to file complaints, seek assistance, and report Harrington's conduct. Rosales also claims that Rosales' actions "never affected the Defendants." (Resp't Obj. ¶ S.) This objection is **OVERRULED** and the Court **ADOPTS IN FULL** the Final Report's finding that Rosales violated TDRPC Rules 4.04(b)(1) and 8.04(a)(3). By clear and convincing evidence, the record overwhelmingly supports a finding that Rosales' bad faith conduct in these matters has been brazenly dishonesty, deceitful, and fraudulent, and worse, Rosales has not expressed remorse – or even acknowledged any wrongdoing – despite

being provided the opportunity to do so before the Panel and before this Court. (See Final Report ¶¶ 19, 20, 26B, 26N, 26Q, 26S.)

T. Alleged Violation of An Impediment to Administration of Justice

Rosales argues that this specific finding is without merit because the Committee can point to no instances that justify it. In support, Rosales states that he filed voluntary dismissals in all six cases before discovery was completed, and these motions should have been granted but Judge Lane "decided to keep the cases open because 'he felt like it.'" (Resp't Obj. ¶ T.) Because the substance of this contention has been thoroughly addressed in the sections above, this objection is **OVERRULED.**

Further, the Court agrees and adopts the Panel's finding that "[t]he numerous instances of misconduct by Mr. Rosales in the six cases at issue caused enormous amount of judicial time to attend to the preparation of cases that should have required very little active judicial supervision," which is in direct contravention to the judicial system's goals for "just, speedy, and inexpensive determination of disputes." (See Final Report ¶ 20.) Finally, the Court reaffirms that Judge Lane's Order and the Panel's Final Report are thorough, specific, and meticulously cite to the record to support and justify their findings and recommendations. (See also id. ¶¶ 26T.)

U. <u>Allegation of Negligent Representation</u>

Rosales claims that the Committee includes no evidence for this determination. In support, Rosales states that of the 384 ADA lawsuits he has filed on behalf of Deutsch, nearly all of the locations are now in compliance with the ADA. (Resp't Obj. ¶ U.) Because Judge Lane's Order, the Final Report, and the instant Order outline serious, numerous, and repeated disciplinary violations supported by the record, they all demonstrate that Rosales has represented his client, Deutsch, in a manner as to raise "serious questions concerning the quality of his professional performance," in violation of Local Rule AT-7(c)(7). Therefore, this objection is **OVERRULED.** (<u>See</u> Final Report ¶¶ 22, 26U.)

V. <u>Allegation of Non-Cooperation with the Committee</u>

Finally, Rosales argues that he repeatedly pointed out the appeal of Judge Lane's Order is currently pending before the Fifth Circuit, and that he repeatedly asked for an abeyance. Rosales also claims that he noted that, if the Fifth Circuit did not overturn Judge Lane's decision, Rosales would appear for any and all questions posed by the Committee. (Resp't Obj. ¶ V.) This objection is also **OVERRULED** because, despite cautionary messages from the Panel reminding Rosales of the cooperation required by Local Rule AT-7(f)(5), Rosales failed to show up to the March 21, 2017 meeting, which had been properly noticed with a sufficient amount of time. Other than the pending Fifth Circuit appeals of

Judge Lane's Order – which, as discussed above, do not affect the Referral therein – Rosales offers no explanation for his failure to cooperate with the Committee's investigation, an opportunity that could have helped exonerate him.  He simply refused to comply with his duty under Local Rule AT-7, and demonstrated total disregard for the TDRPC and the Western District of Texas' Local Rules for Attorney Conduct in so doing.  (See Final Report ¶¶ 23, 26V.)

V.    Court's Concluding Analysis

As set forth above, the Court has comprehensively addressed and found to be baseless Rosales' second set of objections to the Final Report.  The Court has also considered Rosales' counsels' arguments on the same at the July 7, 2017 hearing.

Therefore, in light of the Court's resolution of the objections, as well as the undersigned's review of the entire record, the Court finds that Rosales unquestionably acted in bad faith (1) while conducting himself in the six ADA lawsuits filed on behalf of Deutsch; (2) in his interactions with opposing counsel, Harrington; and (3) in his misuse and exploitation of the integrity of the judicial system, as evidenced in part by his unsubstantiated filings with the Court, groundless accusations of criminal stalking against Harrington, and fabrication and non-retraction of falsified evidence.  See In re Thalheim, 853 F.2d at 389 (requiring a bad faith finding prior to sanctioning an attorney under a court's

inherent powers); see also Roadway Express, 447 U.S. at 766 ("Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." (internal quotations, modifications, and citation omitted)).

### A. Bad Faith and Clear and Convincing Evidence

Specifically, the Court finds that Rosales acted intentionally and in bad faith when, among other things,[36] he: (1) took out an *ex parte* TRO against Harrington for alleged stalking, terroristic threat, and intimidation, later determined to be baseless, to disrupt or avoid appearing at a hearing in front of Judge Lane against Harrington; (2) knowingly fabricated, according to credible forensic testimony, an email that served as an evidentiary exhibit to a brief filed with the Court, and failed to retract this falsified evidence or take reasonable remedial measures; (3) knowingly and repeatedly made false and abusive statements[37] to and regarding Harrington, even after admonition from Judge Lane throughout the litigation; and (4) blatantly disregarded and violated the TDRPC and Local Rules for attorney behavior through motion practice and in hearings and interactions with the Court and with Harrington as demonstrated in the above-discussed misconduct. See Ibarra v. Baker, 338 F. App'x 457, 470 (5th Cir. 2009) ("The court must make

---

[36] The Court incorporates in its bad faith finding its similar findings throughout the instant Order as the undersigned assessed Rosales' objections to the Final Report. (See supra, Discussion.I.–IV.)

[37] As exhaustively detailed in the Order's Appendix. (See Dkt. # 135-1 at 1–3.)

a specific finding of bad faith to impose sanctions under its inherent power."
(internal quotations and citation omitted)); <u>Crowe</u>, 261 F.3d at 563 ("In attorney
suspension and disbarment cases, the finding of bad faith must be supported by
clear and convincing proof." (citing <u>In re Thalheim</u>, 853 F.2d at 389 n.9)); <u>but see</u>
<u>In re Ramos</u>, No. 16-10353, 2017 WL 605292, at *4 n.3 (5th Cir. Feb. 14, 2017)
(noting that, where discipline is imposed for an attorney's violation of the district
court's local rules, "there was no requirement for the district court to find that [the
attorney's] conduct constituted bad faith" (citing <u>In re Goode</u>, 821 F.3d 553, 559
(5th Cir. 2016))).

   The Court agrees with the Final Report's conclusions – and has
independently found that the record clearly and convincingly demonstrates – that
Rosales has failed to acknowledge Judge Lane's and the Committee's repeated
admonitions that sanctions, and potentially disbarment, would result from
continued misconduct. Instead, the record shows repeated, deliberate, and
unabashed conduct that cannot be characterized as merely a "one-off" offense.
Further, although Rosales expressed remorse before the undersigned at the July 7,
2017 hearing, this belated apology neither excuses Rosales' repeated intentional
misconduct over the past year and a half, nor does it diminish the Court's serious
concerns about Rosales practicing law in the Western District of Texas.

Therefore, there is "clear and convincing evidence" that Rosales has committed several disbarment offenses in bad faith, as discussed above, that – while in the singular might not have been sufficient to merit disbarment – in their totality, frequency, and severity, they lead the Court to firmly believe that, at the very least, serious sanctions must be imposed to mirror the severity of Rosales' intentional and bad faith misconduct. Moreover, the Fifth Circuit has specifically adopted the following definition of "clear and convincing" for attorney suspension and disbarment cases:

> ["Clear and convincing" is] that weight of proof which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case.

Crowe, 261 F.3d at 565 (quoting In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992) (quoting Cruzan by Cruzan v. Dir., Missouri Dep't of Health, 497 U.S. 261, 285 n.11 (1990))). Here, the Court is convinced, "without hesitancy," that the evidence is so "clear, direct, and weighty" as to prove the truth of the allegations and disciplinary violations brought to light in the Referral and investigated thoroughly by the Committee. In fact, the Fifth Circuit specifically urges "any practicing attorney to be mindful of the fact that personal integrity is essential to the due administration of justice and a fundamental requirement for an officer of the

80

court." In re Ramos, 2017 WL 605292, at *5 n.5.  Unfortunately, the Court is firm

in its conviction that the record clearly and convincingly shows that Rosales has

demonstrably lacked any such integrity in his misconduct before the court and

against opposing counsel.

      B. Procedural Due Process

      Furthermore, the Court finds that Rosales at every stage of (1) the

litigation before Judge Lane, (2) the Committee's investigation after receiving

Judge Lane's Referral, and (3) the present proceedings before the undersigned, has

been adequately afforded notice and due process, as required.  See In re Sealed

Appellant, 194 F.3d at 670.  First, as evinced by the record and summarized in

Judge Lane's Order, Rosales was repeatedly admonished for his contentious

behavior and specifically warned numerous times throughout 2016 that, if he did

not correct his misbehavior, sanctions would follow.  Additionally, Rosales – as

required by Rule 11 – was explicitly given notice about the substantive issues and

categories of sanctionable conduct that would be addressed at the Show Cause

Hearing.  The Show Cause Hearing provided Rosales an opportunity to be heard

on these issues.

      Second – as demonstrated by the significant correspondence between

the Committee Chair (Bayer), the Panel chair (McKetta), and Rosales – Rosales

was properly and timely given notice about the Referral, the screening

subcommittee, the investigation, the March 21, 2017 meeting before the Panel, and

his rights and responsibilities under the Local Attorney Rules, specifically Local

Rule AT-7. The Panel afforded him an opportunity to be heard and to have his

defenses and arguments regarding the Referral addressed, but Rosales decided not

to appear, based on an erroneous assumption that – contrary to the Panel's

communications to him – the investigation and the Referral "would go away after

the Fifth Circuit reverses Judge Lane's Order." The Committee's and the Panel's

conduct was in accordance with the unambiguous Local Attorney Rules of the

Western District of Texas. See Bright, 6. F.3d at 341 (disciplinary rules used to

impose disbarment must be "strictly construed"); Dailey, 141 F.3d at 229 (because

disbarment is adversarial and quasi-criminal in nature, an attorney is entitled to

procedural due process, including notice and opportunity to be heard).

Finally, pursuant to Local Rule AT-7(g), the undersigned here

provided Rosales the opportunity for a closed hearing, which was conducted on

July 7, 2017, to specifically address Rosales' second set of objections to the Final

Report. However, over the span of a year and half of (1) misconduct, (2) warnings,

(3) sanctions, (4) investigation by the Committee, and at (5) the hearing before the

undersigned, Rosales has not met his burden of showing good cause why he should

not be disciplined. See Theard, 228 F.2d at 618. That being said, the Court

received evidence in mitigation that may not have been available to the Committee

or to Judge Lane regarding Rosales' PTSD diagnosis and his willingness to undergo mental health treatment. Therefore, in light of allocution at the July 7, 2017 hearing, as well as a thorough review of the entire record and mitigating circumstances presented to the undersigned, the Court hereby **PARTIALLY ADOPTS** the Panel's Final Report, deviating only from the Committee's recommendation that the Court disbar Rosales from the Western District of Texas.

In lieu of disbarment, and in light of the above bad faith findings on the basis of clear and convincing evidence, the Court hereby **SUSPENDS** Rosales from practice in the Western District of Texas for a period of **THREE YEARS**, finding suspension is necessary for the protection of the public, the profession, and the integrity of the judicial system. See NASCO, Inc., 894 F.2d at 708 (a district court may suspend or disbar attorneys "only on the strength of clear and convincing evidence"); In re Medrano, 956 F.2d at 102 (same); Crowe, 261 F.3d at 563 ("In attorney suspension and disbarment cases, the finding of bad faith must be supported by clear and convincing proof."). The Court emphasizes that it understands and shares the Committee's serious concerns regarding Rosales' intentional misconduct, but finds – based on the entire record, including Respondent's PTSD from his time in the military – that a three year suspension, with the possibility to reapply for readmission, suffices to balance the disciplinary

and remedial purposes of sanctions with the need to protect the public and the legal profession.

Thus, as permitted by established case law, this Court aims – in its partial adoption of the Final Report and in its suspension of Rosales – to hold Rosales accountable to, *inter alia*, the Federal Rules of Civil Procedure, the TDRPC, the canons of ethics developed by the ABA, the Local Rules of the Western District of Texas, and basic rules of common courtesy, respect, decency, and professionalism required of all attorneys practicing in federal court. See Bright, 6 F.3d at 341.

### CONCLUSION

For the reasons set forth, the Court **ADOPTS IN PART** the Panel's Final Report issued on April 25, 2017, and **OVERRULES** Rosales' objections to the same. By virtue of this Court's partial adoption of the Final Report, the Court – pursuant to its inherent power[38] and Local Rule AT-7(i) – **HEREBY:**

    (1) **SUSPENDS FOR A PERIOD OF THREE YEARS** Respondent Omar W. Rosales, Esq. from admission to and practice in the Western District of Texas, effective immediately, and **EXPUNGES** his name from the roles of those admitted to practice before the Court for that time period;

---

[38] See Bright, 6 F.3d at 340 ("It is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers." (citing, *inter alia*, Snyder, 472 U.S. at 643–44)).

(2) **ORDERS,** in the event Rosales wishes to seek readmission to the District at the end of the three-year suspension, that Rosales undergo a legal professional ethics training course, as approved by this Court, during his three-year suspension;

(3) **ORDERS,** in the event Rosales wishes to seek readmission to the District at the end of the three-year suspension, that Rosales continue mental health counseling and participate in anger management classes, as approved by this Court;

(4) **DIRECTS** the Clerk of Court to give to the Clerks of the United States District Courts and the United States Courts of Appeals in which Rosales is admitted to practice, or any jurisdiction in which he is admitted to practice *pro hac vice*, a copy of this Order, so that each of those Courts in which Rosales is licensed may be aware of the misconduct that has occurred in connection with these six civil cases;

(5) **DIRECTS** the Clerk to give to the Office of the Chief Disciplinary Counsel of the State Bar of Texas a copy of this Order;

(6) **ORDERS** Rosales to give to every client of his, whether such client is a litigant in a case within the United States District Court for the Western District of Texas or not, a copy of this Order;

(7) **ORDERS** Rosales to immediately assist in substitution of other counsel, or in entry of a *pro se* appearance, for every client of his who currently is a litigant in a case within the United States District Court for the Western District of Texas; and

(8) **ORDERS** Rosales to comply promptly and scrupulously with the requirements of Rule 1.15(d) of the Texas Disciplinary Rules of Professional Conduct concerning events upon termination of representation.

(9) Further, in **THREE YEARS** from the date of this Order, Rosales is **PERMITTED** to reapply for re-admission to the United States District Court for the Western District of Texas, provided he satisfies all the requirements for admission set forth in Local Rule AT-1, and subject to this Court's discretion to determine whether Rosales is fit to practice law in this district. Any such reapplication for re-admission is predicated on the requirement that Rosales be a current member in good standing of the Texas State Bar at the time of re-application. Finally, any such reapplication must include sufficient proof that Rosales has successfully attended a legal ethics class and undergone mental health and anger management treatment to address the issues that were the cause of the instant disciplinary matter.

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, July 11, 2017.

DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE